# EXHIBIT A

# BY-LAWS

## OF

## TRUMP TOWER AT CITY CENTER CONDOMINIUM

**CERTILMAN BALIN ADLER & HYMAN, LLP**
Attorneys for the Sponsor
The Financial Center at Mitchel Field
90 Merrick Avenue
East Meadow, New York 11554

Exhibit A
to the Declaration of Condominium

## SCHEDULE J TO THE OFFERING PLAN

iManage:1566197.1

# BY-LAWS

## OF

## TRUMP TOWER AT CITY CENTER  CONDOMINIUM

## TABLE OF CONTENTS

Page

| | | |
|---|---|---|
| **ARTICLE I.** | **PLAN OF CONDOMINIUM OWNERSHIP** | 1 |
| Section 1. | Condominium Unit Ownership | 1 |
| Section 2. | By-Laws Applicability | 1 |
| Section 3. | Personal Application | 1 |
| Section 4. | Definitions | 1 |
| | | |
| **ARTICLE II.** | **CONDOMINIUM, VOTING, QUORUM AND WAIVERS** | 1 |
| Section 1. | Condominium | 1 |
| Section 2. | Voting | 1 |
| Section 3. | Quorum | 2 |
| Section 4. | Vote Required to Transact Business | 2 |
| Section 5. | Right to Vote | 2 |
| Section 6. | Proxies | 2 |
| Section 7. | Waiver and Consent | 2 |
| Section 8. | Place of Meetings | 3 |
| Section 9. | Annual Meetings | 3 |
| Section 10. | Special Meetings | 3 |
| Section 11. | Notice of Meetings | 4 |
| Section 12. | Order of Business | 4 |
| | | |
| **ARTICLE III.** | **BOARD OF MANAGERS** | 4 |
| Section 1. | Number and Term | 4 |
| Section 2. | Vacancy and Replacement | 5 |
| Section 3. | Removal | 6 |
| Section 4. | Resignation | 6 |
| Section 5. | First Board of Managers | 6 |
| Section 6. | Powers | 6 |
| Section 7. | Repairs and Maintenance | 11 |
| Section 8. | Compensation | 13 |
| Section 9. | Meetings | 13 |
| Section 10. | Annual Statement | 14 |
| Section 11. | Fidelity Bonds | 14 |
| Section 12. | Management Agent | 14 |
| Section 13. | Liability of the Board of Managers and Unit Owners | 14 |

## TABLE OF CONTENTS - continued

Page

**ARTICLE IV.**    **OFFICERS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
Section 1.    Elective Officers . . . . . . . . . . . . . . . . . . . . . . . 15
Section 2.    Election . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
Section 3.    Appointive Officers . . . . . . . . . . . . . . . . . . . . 15
Section 4.    Term . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
Section 5.    The President . . . . . . . . . . . . . . . . . . . . . . . . 16
Section 6.    The Vice President . . . . . . . . . . . . . . . . . . . . 16
Section 7.    The Secretary . . . . . . . . . . . . . . . . . . . . . . . 16
Section 8.    The Treasurer . . . . . . . . . . . . . . . . . . . . . . . 16
Section 9.    Agreements, etc. . . . . . . . . . . . . . . . . . . . . . 17

**ARTICLE V.**    **NOTICES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
Section 1.    Definition . . . . . . . . . . . . . . . . . . . . . . . . . . 17
Section 2.    Service of Notice Waiver . . . . . . . . . . . . . . . . . 17

**ARTICLE VI.**    **FINANCES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
Section 1.    Checks . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
Section 2.    Assessments . . . . . . . . . . . . . . . . . . . . . . . 17
Section 3.    Foreclosure of Liens for Unpaid Common Charges . . . . . . . . . 19
Section 4.    Statement of Common Charges . . . . . . . . . . . . . . . . . 19
Section 5.    Liability for Utilities . . . . . . . . . . . . . . . . . . . 19
Section 6.    Operating Account . . . . . . . . . . . . . . . . . . . . 19
Section 7.    Other Accounts . . . . . . . . . . . . . . . . . . . . . . 19
Section 8.    Determination of Common Expenses and Fixing of
         Common Charges . . . . . . . . . . . . . . . . . . . . . 19

**ARTICLE VII.**    **INSURANCE AND INSURANCE TRUSTEE** . . . . . . . . . . . . . . 21
Section 1.    Insurance to be Carried by the Board . . . . . . . . . . . . . . . 21
Section 2.    The Insurance Trustee . . . . . . . . . . . . . . . . . . . 23
Section 3.    Restoration or Reconstruction after Fire or Other Casualty . . . . 23

**ARTICLE VIII.**    **HOUSE RULES** . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**ARTICLE IX.**    **DEFAULT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

**ARTICLE X.**    **AMENDMENTS** . . . . . . . . . . . . . . . . . . . . . . . . . . 39

**ARTICLE XI.**    **SELLING, MORTGAGING AND LEASING
         UNITS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
Section 1.    Selling and Leasing Units . . . . . . . . . . . . . . . . . 40
Section 2.    Leasing Requirements . . . . . . . . . . . . . . . . . . . 40

ii

## TABLE OF CONTENTS - continued

Page

| | | |
|---|---|---|
| Section 3. | Tenant Bound by Declaration | 42 |
| Section 4. | Lenders | 42 |
| Section 5. | Section 339-kk of the Real Property Law | 42 |
| Section 6. | Waiver of Partition Rights | 42 |
| Section 7. | Gifts etc. | 42 |
| **ARTICLE XII.** | **ARBITRATION** | 42 |
| Section 1. | Procedure | 42 |
| Section 2. | Variation by Agreement | 43 |
| Section 3. | Binding Effect | 43 |
| Section 4. | Costs and Expenses | 43 |
| **ARTICLE XIII.** | **CONDEMNATION** | 43 |
| **ARTICLE XIV.** | **SPONSOR RIGHTS** | 44 |
| Section 1. | Sales | 44 |
| Section 2. | Signs | 44 |
| **ARTICLE XV.** | **MISCELLANEOUS** | 44 |
| Section 1. | Insurance | 44 |
| Section 2. | Severability | 44 |
| Section 3. | Notice to Condominium | 45 |
| Section 4. | Notice of Unpaid Assessments | 45 |
| Section 5. | Examination of Books and Records | 45 |
| Section 6. | Construction | 45 |
| Section 7. | Compliance with Article 9-B | 45 |

iManage:1566197.1

**BY-LAWS**

**OF**

**TRUMP TOWER AT CITY CENTER CONDOMINIUM**

## ARTICLE I. PLAN OF CONDOMINIUM OWNERSHIP

**Section 1. Condominium Unit Ownership**. The property located at 10 City Place, Westchester County, City of White Plains, State of New York as specifically set forth in the Declaration and more commonly known as Trump Tower at City Center Condominium has been submitted to the provisions of Article 9-B of the Real Property Law of the State of New York.

**Section 2. By-Laws Applicability**. The provisions of these By-Laws are applicable to the Condominium. The term "Condominium" as used herein shall include the land and the Building and improvements thereon including the Condominium Units (hereinafter referred to as " Units"), and the Common Elements and the use and occupancy thereof, the term "Building" as hereinafter used shall be defined as the exterior walls and roof of the Units all of which are constructed under a continuous roof.

**Section 3. Personal Application**. All present or future Unit Owners, mortgagees and lessees, or their employees, guests or any other person that might use the facilities of the Condominium in any manner are subject to these By-Laws, the Declaration and any Rules and Regulations established by the Board of Managers. The mere acquisition or rental of any of the Units or the mere act of occupancy of any of said Units will signify that these By-Laws, the Declaration and the Rules and Regulations are accepted, ratified, and will be complied with.

**Section 4.   Definitions**.   The definitions contained in the Declaration of Condominium shall be applicable to these By-Laws unless otherwise indicated.

## ARTICLE II. CONDOMINIUM, VOTING, QUORUM, PROXIES AND WAIVERS

**Section 1.   Condominium**.   The Condominium shall be limited to Unit Owners. "Unit Owner" as referred to herein shall mean all of the owners of each Residential and Commercial Unit. The owners of the Residential Units shall hereinafter be referred to as Residential Unit Owners. The owners of the Commercial Units shall be referred to as the Commercial Unit Owners.

**Section 2. Voting**. Each Unit Owner (including the Sponsor and the Board of Managers, if the Sponsor or the Board of Managers shall then own or hold title to one or more Units) shall be entitled to cast one vote at all Unit Owners' meetings for each Unit or Units owned by such Unit Owner subject to the restrictions contained herein, but in the

1

event the Board of Managers acquires a Unit on behalf of the Condominium it shall not cast any of its votes appurtenant to said Unit for the election of any member to the Board.

**Section 3. Quorum.** So many Unit Owners as shall represent at least fifty-one (51%) percent of the total authorized votes of all Unit Owners present in person or represented by written proxy shall constitute a quorum at all meetings of the Unit Owners for the transaction of business, except as otherwise provided by Statute, by the Declaration, or by these By-Laws. If, however, such quorum shall not be present or represented at any meeting of the Unit Owners, the Unit Owners entitled to vote thereat, present in person or represented by written proxy, shall have power to adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum shall be present or represented, any business may be transacted which might have been transacted at the meeting originally called. At such adjourned meeting so many Unit Owners as shall represent at least thirty-three and one-third (33⅓%) percent of the total authorized votes of all Unit Owners shall constitute a quorum. If, however, such reduced quorum shall not be present or represented at such adjourned meeting of the Condominium, the Unit Owners entitled to vote thereat, present in person or represented by written proxy, shall have the power to adjourn the meeting. At least five (5) days written notice of such adjourned meeting shall be given to all Unit Owners. At such adjourned meeting, any business may be transacted which might have been transacted at the meeting originally called. At such adjourned meeting, so many Unit Owners as shall represent at least twenty-five (25%) percent of the total authorized votes of all Unit Owners shall constitute a quorum.

**Section 4. Vote Required to Transact Business.** When a quorum is present at any meeting, the vote of a majority of the Unit Owners present in person or represented by written proxy shall decide any question brought before such meeting and such vote shall be binding upon all Unit Owners, unless the question is one upon which, by express provisions of the Declaration, Statute, or of these By-Laws, a different vote is required, in which case such express provisions shall govern and control the decision of such question.

**Section 5. Right to Vote.** At any meeting of Unit Owners, every Unit Owner having the right to vote shall be entitled to vote in person, or by proxy. Such proxy shall only be valid for such meeting or subsequent adjourned meetings thereof.

**Section 6. Proxies.** All proxies shall be in writing and shall be filed with the Secretary prior to the meeting at which the same are to be used. A notation of such proxies shall be made in the minutes of the meeting.

**Section 7. Waiver and Consent.** Whenever the vote of Unit Owners at a meeting is required or permitted by any provision of the Declaration, Statutes or of these By-Laws to be taken in connection with any action of the Condominium, the meeting and vote of Unit Owners may be dispensed with if all Unit Owners who would have been entitled to vote upon the action if such meeting were held, shall consent in writing to such action being taken.

iManage:1566197.1

**Section 8.  Place of Meetings.**  Meetings shall be held at such suitable place convenient to the Unit Owners as may be designated by the Board of Managers.

**Section 9.  Annual Meetings and Control of Board of Managers by Sponsor.** The initial Board of Managers will call for the first annual meeting of the Unit Owners to elect a new Board of Managers within one (1) year of the closing of title to the first Unit. At such meeting, members of the Board of Managers shall be elected by the Unit Owners, as provided for herein, other than the members of the Board the Sponsor shall have the right to designate, and the former members of the Board shall thereupon resign. Thereafter annual meetings shall be held on the anniversary of such date each succeeding year or such other convenient date as the Board of Managers may so designate.  At such meetings there shall be elected by ballot of the Unit Owners a Board of Managers in accordance with the requirements of Article III of these By-Laws.  The Unit Owners may also transact such other business of the Condominium as may properly come before them. The Sponsor will have voting control and may designate a majority of the Residential Members of the Board of Managers until the earlier of the closing of title to eighty-five (85%) percent of the Residential Units or five (5) years from the closing of title to the first Residential Unit.  Thereafter Sponsor shall be entitled to designate one (1) member to the Board of Managers as long as the Sponsor retains ownership of at least one (1) unsold Residential Unit.  At such time as Sponsor no longer owns a Residential Unit in the Condominium, Sponsor may not hold a seat of the Residential Members of the Board of Managers.

**Section 10. Special Meetings.**  It shall be the duty of the President to call a special meeting of the Condominium, if so directed by the Board of Managers, or upon the presentation to the Secretary of a petition signed by a majority of the Unit Owners. The secretary shall cause a notice of such special meeting stating the time, place and object thereof and the officer or other person or persons by whom the meeting is called, to be delivered personally or mailed as provided in Section 11 of this Article to each Unit Owner of the Condominium entitled to vote at such meeting not less than ten (10) nor more than thirty (30) days before such meeting.  The date of the special meeting shall be determined by the Board of Managers and shall be held no later than sixty (60) days from receipt of any written request pursuant to this Section 10 unless a later date is agreed to in writing by the Unit Owners of the Condominium or the Board of Managers, requesting such meeting.  No business other than that stated in such notice shall be transacted at such special meeting unless all Unit Owners of the Condominium are present in person or by proxy. Any or all of the Residential Members of the Board of Managers of the Condominium, other than those designated by the Declarant, may be removed without cause by vote of the Residential Unit Owners of the Condominium at a special meeting called pursuant to this section if the meeting is called for such purpose. The Commercial Member representative of the Board of Managers of the Condominium may only be removed by the Commercial Member(s) and no special meeting for such purpose is necessary.

3

**Section 11.  Notice of Meetings**.  It shall be the duty of the Secretary to mail a notice of each annual or special meeting, stating the purpose thereof as well as the time and place where it is to be held, to each Unit Owner of record, at least ten (10) but not more than thirty (30) days prior to such meeting.  The mailing of a notice in the manner provided in these By-Laws shall be considered notice served.

**Section 12.  Order of Business**.  The order of business at all meetings shall be as follows:

(a) Roll Call
(b) Proof of notice of meeting or waiver of notice
(c) Reading of minutes of preceding meeting
(d) Report of officers
(e) Report of committees
(f) Election of inspectors of election (in the event there is an election)
(g) Election of managers (in the event there is an election)
(h) Unfinished business
(i) New business

## ARTICLE III.  BOARD OF MANAGERS

**Section 1.  Number and Term.**  The affairs of the Condominium shall be governed by a Board of Managers.  The first Board of Managers shall consist of three (3) Managers designated by the Sponsor who shall hold office and exercise all powers of the Board of Managers until the first annual meeting of the Unit Owners.  Until succeeded by the Residential Managers elected at the first annual meeting of Unit Owners, Residential Members of the Board of Managers need not be Residential Unit Owners; thereafter, all Residential Members of the Board of Managers, other than designees or nominees of the Sponsor, must be Residential Unit Owners.  The Commercial Member representative to the Board of Managers does not need to be a Commercial Unit Owner.  The Managers shall be elected or designated at the annual meeting of the Unit Owners.

At the first annual meeting of Unit Owners called pursuant to Section 9 of Article II a total of eight (8) Managers shall be elected or designated.  Seven (7) members shall constitute the Residential Members of the Board of Managers and one (1) member shall constitute the Commercial member of the Board of Managers.  At the first annual meeting of the Unit Owners three (3) of the Residential Members of the Board of Managers who are to be elected by the Residential Unit Owners shall be elected for a three (3) year term, two (2) members shall be elected for a two (2) year term and two (2) members shall be elected for a one (1) year term.  At the expiration of the initial term of office of each respective Manager, the Manager's successor shall be elected to serve a term of three (3) years.  Elections are to be held annually.  Sponsor Residential Members to the Board shall remain on the Board until they are required to relinquish their seat or until they resign

4                                                          iManage:1566197.1

voluntarily. Thereafter, the remaining Residential Members of the Board shall either appoint Residential Members to the Board to serve on the Board until the next annual meeting or call for a special election pursuant to Article II, Section 10 hereof for the Residential Unit Owners to elect the respective Residential Members to the board to serve on the board until the next annual meeting. At such annual meeting the respective Residential Board Member(s) shall resign and the Residential Unit Owners shall elect a Residential Unit Owner to such vacant seat for a full three (3) year term.

The Commercial Unit Owner representative to the Board of Managers shall serve until such time as the representative resigns or is replaced by the then Commercial Unit Owner(s).

Separate ballots shall be conducted for each term of office. Each Unit Owner shall be entitled to cast one vote on each ballot for each Unit owned. The one nominee(s) on each of the ballots, as the case may be, receiving the highest number of votes on their ballot shall constitute the duly elected Board of Managers. The Managers shall hold office until their successors have been elected and hold their first meeting.

Notwithstanding the foregoing, until the earlier of the closing of title to eighty-five (85%) percent of the Residential Units or five (5) years from the closing of title to the first Residential Unit, the Residential Members of the Board of Managers shall consist of four (4) members designated by the Sponsor and three (3) members elected by the Residential Unit Owners as provided above. Thereafter Sponsor shall be entitled to designate one (1) member to the Board of Managers as long as the Sponsor retains ownership of at least one (1) unsold Residential Unit. The one (1) Commercial Member of the Board shall be designated by the Sponsor as long as the Sponsor or its designee retains ownership of the Commercial Unit(s). In the event Sponsor sells the Commercial Unit(s), the one (1) Commercial Unit representative to the Board of Managers shall be elected or designated by the then Commercial Unit Owner(s). In such an event each Commercial Unit Owner shall have as many votes as equal their percentage of Common Interest solely for the purpose of electing the Commercial Board Member.

Sponsor will continue to hold annual meetings during the period it retains a majority of the Board of Managers. At such time as title to all of the Residential Units have been conveyed by the Sponsor to Residential Unit Owners other than the Sponsor or its designees or assignees, Sponsor will not be entitled to any seats of the Residential Members to the Board of Managers.

This Section may not be amended without the written consent of Sponsor.

**Section 2.  Vacancy and Replacement**. If the office of any Residential Member of the Board of Manager or Managers becomes vacant by reasons of death, resignation, retirement, disqualification, removal from office or otherwise, a majority of the remaining managers, though less than a quorum, at a special meeting of just the Residential Members of the Board of Managers duly called for this purpose, shall choose a successor

iManage:1566197.1

or successors, who shall hold office for the unexpired term in respect to which such vacancy occurred. In the event of the failure to hold any election of the Board of Managers at the time designated for the annual election of the Board of Managers or in the event that the Board of Managers shall not have filled any such vacancy, a special meeting of the Unit Owners to elect a new Board of Managers or to fill such vacancy or vacancies may be called in the manner generally provided for the calling of special meetings of the Unit Owners. If the vacancy occurs with respect to any member of the first Board of Managers (see Section 4 of this Article III) or any other manager who has been designated by the Sponsor, the Sponsor shall have the sole right to choose such Manager's successor to fill the unexpired portion of his term.   If the office of the Commercial Member to the Board of Managers becomes vacant by reasons of death, resignation, retirements, disqualification, removal from office or otherwise, the then Commercial Unit Owner(s) shall choose a successor or successors, who shall hold office for the unexpired term in respect to which such vacancy occurred.

**Section 3.  Removal**.  Members of the Board of Managers may be removed for cause by an affirmative vote of a majority of the Unit Owners.  No manager, other than a member of the First Board of Managers or a designee of the Sponsor or the Commercial Unit representative to the Board of Managers, shall continue to serve on the Board if, during their term of office, they shall cease to be a Unit Owner.  In the event a Sponsor designee or Commercial Unit Member of the Board of Managers is removed for cause, the Sponsor or Commercial Unit Member of the Board of Managers shall have the sole right to designate a replacement.

**Section 4. Resignation.**  Any manager may resign at any time by written notice delivered in person or sent by certified registered mail to the President or Secretary of the Condominium. Such resignation shall take effect at the time specified therein. Acceptance of such resignation shall not be necessary to make it effective.

**Section 5.  First Board of Managers**.  The first Board of Managers shall consist of Louis R. Cappelli, Richard Dannenbaum, Bruce Berg and Jeanne Kehoe who shall hold office and exercise all powers of the Board of Managers until the first annual meeting of Unit Owners. Any or all of said Managers shall be subject to replacement in the event of resignation or death in the manner set forth in Section 2 of this Article.

**Section 6.  Powers**.

(a)    The property and business of the Condominium shall be managed by its Board of Managers, which may exercise all such powers of the Condominium and do all such lawful acts and things as are not by Statute or by the Declaration or by these By-Laws, directed or required to be exercised or done by the Unit Owners personally. These powers shall specifically include, but not be limited to, the following items:

iManage:1566197.1

1.      To determine and levy monthly assessments ("Common Charges") to cover the cost of Common Expenses, payable in advance.  The Board of Managers may increase the monthly Common Charges or vote a special assessment in excess of monthly Common Charges, if required, to meet any additional necessary expenses, but said increases can only be assessed among all the Unit Owners pro-rata according to their respective Percentage of General Common Interest, in the overall building for General Common Elements and among the Residential Unit Owners pro-rata according to their respective Residential Common Interest in the Residential portion of the Building as reflected in Schedule A of the Declaration, however, expenses for General Common Elements may be allocated and assessed in accordance with sub-metering, contract allocations and usage (both projected and actual) so long as such allocations are reasonable under the circumstances and are in accordance with applicable provisions of law.

2.      To collect use and expend the Common Charges collected to maintain, care for and preserve the Units, the Building, the General Common Elements and the Residential Units' Limited Common Elements;

3.      To make repairs, restore or alter any Unit or the Common Elements after damage or destruction by fire or other casualty or as a result of condemnation or eminent domain proceedings;

4.      To enter into and upon any Unit when necessary and at as little inconvenience to the Unit Owners as possible in connection with the maintenance, care, and preservation of the Condominium.

5.      To open bank accounts on behalf of the Condominium and Units to designate the signatories to such bank accounts;

6.      To insure and keep insured the Condominium Units in accordance with Article VII of these By-Laws;

7.      To collect delinquent Common Charges by suit or otherwise, to abate nuisances and to enjoin or seek damages from the Residential Unit Owners of the property for violations of the house rules or rules and regulations herein referred to;

8.      To make reasonable rules and regulations applicable to the Residential Units and Commercial Units and their Owners and to amend the same from time to time, and such rules and regulations and amendments shall be binding upon the Residential and Commercial Unit Owners when the Board has approved them in writing.  A copy of such rules and all amendments shall be delivered to each Residential and Commercial Unit.  In no event however, may any rule or regulation prevent a Commercial Unit Owner from engaging in the practice of their business unless such practice is a violation of the law or applicable zoning.

7

9.  To employ and terminate the employment of employees and independent contractors and to purchase supplies and equipment, to enter into contracts, and generally to have the powers of a manager in connection with the matters herein above set forth;

10.  To bring and defend actions by or against more than one Unit Owner and pertinent to the operation of the Condominium and to levy special Common Charge assessments to pay for the cost of such litigation.  Any action by or against a Residential Unit or Units solely and pertinent solely to the operation of the Residential portion of the Condominium shall be a Common Charge assessment against only the Residential Unit Owners.  Any action by or against the Commercial Unit(s) solely and pertinent solely to the operation of the Commercial portion of the Condominium shall be a Common Charge assessment against only the Commercial Unit(s) Owner(s).

11.  To acquire Units in foreclosure or as a result of abandonment and to take any or all steps necessary to repair or renovate any Unit so acquired and to vote as a Unit Owner, offer such Unit for sale or lease or take any other steps regarding such Unit as shall be deemed proper by the Board of Managers;

12.  To made additions, alterations, or improvements to the General Common Elements and the Residential Units' Limited Common Elements of the Condominium, the cost of which addition, alteration, or improvement does not exceed $200,000.  The Board of Managers may make additions, alterations or improvements to the General Common Elements and the Residential Units' Limited Common Elements costing in excess of $200,000 only with the approval of a majority of all the Unit Owners as to additions, alterations or improvements which affect the General Common Elements and with the approval of a majority of only the Residential Unit Owners as to additions, alterations or improvements which affect only the Residential Units' Limited Common Elements.  While the Sponsor is in control of the Board of Managers, the Board may make additions, alterations, or improvements to the General Common Elements and Residential Units' Limited Common Elements costing in excess of $50,000 or enter into service or maintenance contracts the duration of which will extend more than one (1) year after the Sponsor loses control of the Board of Managers, only with the approval of a majority of all the Unit Owners as it may affect the General Common Elements and a majority of all the Residential Unit Owners as it affects the Residential Units' Limited Common Elements, excluding the Sponsor, voting at a duly held meeting of the Unit Owners.  In addition, the Sponsor must give Sponsor's written approval.  The above dollar limitation shall not apply to repairs to the General Common Elements or the Residential Units' Limited Common Elements required (i) to comply with applicable laws or regulations; or (ii) to remedy any notice of violation; or (iii) to remedy any work order by an insurer.

iManage:1566197.1

13.     To borrow money on behalf of the Condominium when required in connection with the operation, care, upkeep and maintenance of the Residential Units' Limited Common Elements and General Common Elements, provided, however, that (i) the consent of at least sixty-six and two-thirds (66⅔%) percent in number of all the Unit Owners to borrow for the operation, care, upkeep and maintenance of the General Common Elements and the consent of at least sixty-six and two-thirds (66⅔%) percent in number of the Residential Unit Owners to borrow for the operation, care, upkeep and maintenance of the General Residential Units' Limited Common Elements, obtained at a meeting duly called and held for such purpose in accordance with the provisions of these By-Laws, shall be required for the borrowing of any sum in excess of $200,000 other than any refinancing of the mortgage encumbering the superintendent's apartment which shall be a Board of Manager' decision and shall not require the vote of the Unit Owners and (ii) no lien to secure repayment of any sum borrowed may be created on any Unit or its appurtenant interest in the Common Elements without the written consent of the Owners of said Unit.

14.     To act as an agent for one (1) or more Unit Owners to file a single complaint and bring a special proceeding on behalf of Unit Owners who wish to contest the real estate tax assessments of their Unit pursuant to Section 339-y(4) of the New York Property Law. In such event, the Board could retain counsel on behalf of such Unit Owners and charge each Unit Owner for whom it is acting a pro rata share of expenses, disbursements and legal fees, the payment for which shall be secured by a lien on each Unit. The Board of Managers is not obligated to perform such services and it is necessary to obtain the written authorization of the Unit Owners;

15.     To grant utility or other easements over or to the Common Elements as may, at any time, be required for the benefit of the Condominium and the Unit Owners without the necessity of the consent thereto, or joinder therein, by the Unit Owners or any mortgagee (except that if the granting of such easement impairs the ability of one or more Unit Owners who have the right to use such Common Elements to the exclusion of any other Unit Owner, the consent of all such affected Unit Owners shall be required in writing before such easement shall be granted).

(b)     The Board of Managers may, by resolution or resolutions passed by a majority of the whole Board, designate one or more committees, each of such committees to include at least one (1) manager which, to the extent provided in said resolution or resolutions, shall have and may exercise the powers of the Board of Managers in the management of the business affairs of the Condominium and may have power to sign all papers which may be required, provided the said resolutions shall specifically so provide. Such committee or committees shall have such name or names as may be determined from time to time by resolution adopted by the Board of Managers. Committees established by resolution of the Board of Managers shall keep regular minutes of their proceedings and shall report the same to the Board as required.

9

iManage:1566197.1

(c)     Notwithstanding anything to the contrary contained in these By-Laws, for a period ending not more than five (5) years after the closing of title to the first Residential Unit or whenever the unsold Residential Units constitute less than twenty-five (25%) percent of the General Common Interest, whichever is sooner, the Board of Managers, may not, without the Sponsor's prior written consent: (i) make an addition, alteration or improvement to the General Common Elements, Residential Units' Limited Common Elements  or to any Residential Unit, costing cumulatively more than $75,000, the foregoing not to include necessary repairs and maintenance work, or (ii) assess any Common Charges for the creation of, addition to, or replacement of all or part of a reserve, contingency or surplus fund, in excess of the reserve for contingencies contained in the Condominium budget for the first year of operation, (iii) hire any employee in addition to the employees referred to in the Plan of Condominium ownership, or (iv) enter into any service or maintenance contract for work not covered by contracts in existence on the date of closing of the first Residential Unit, or (v) borrow money on behalf of the Condominium, (vi) reduce the services or maintenance set forth in the Condominium budget for the first year of operation, or (vii) charge any special Common Charge assessment for a non-budgeted item unless required by law, municipal agency, emergency or for the health and safety of the Condominium; or (viii) increase the Common Charges of the Condominium more than ten (10%) percent from the prior year's budget, unless documentation is provided to the Sponsor in the nature of a financial statement, bids from contractors or verified increases in utility rates, evidencing the need for an increase greater than ten (10%) percent, or (ix) utilize Condominium funds or assess the Sponsor in order to commence a lawsuit against the Sponsor or any of its principals.

(d)     Notwithstanding Article III, Section 6(c) of these By-Laws Sponsor may not exercise veto power over expenses described in the proposed first year budget, as described in the Offering Plan, or over expenses required:

          (i)     to comply with applicable laws or regulations; or

          (ii)    to remedy any notice of violation; or

          (iii)   to remedy any work order by an insurer.

(e)     Sponsor may exercise veto power over expenses, other than those described in Article III, Sections 6(c) and (d) of the By-Laws, for a period ending not more than five (5) years after the closing of the first Residential Unit or whenever the unsold Residential Units constitute less than twenty-five (25%) percent of the common interest, whichever is sooner.

The provisions of this paragraph may not be amended without the written consent of Sponsor.

**Section   7.   Repairs and Maintenance**.     All maintenance, repairs and replacements to the General Common Elements including but not limited to exterior walls of the Building, windows, roof and roof members, elevators, corridors, stairs, as well as all

iManage:1566197.1

maintenance, repairs and replacements to any pipes, wires, conduits and public utility lines, any portion of which is located in one Unit and services another Unit or services two (2) or more Units or so much of any pipes, wires, conduits and public utility lines as are located in the General Common Elements but serve one or more Units shall be made by the Board of Managers and the cost thereof shall be a Common Charge payable by all Unit Owners based on their percentage of General Common Interest in the Condominium. The Board of Managers shall repair all plumbing stoppages and electrical repairs occurring in the General Common Elements.

All maintenance, repair and replacement to the Residential Units' Limited Common Elements servicing the Residential Units including maintenance, repairs and replacements to any pipes, wires, conduits and public utility lines, any portion of which is located in one Residential Unit and services another Residential Unit or more than one (1) Residential Unit or so much of any pipes, wires, conduits and public utility lines as are located in the Residential Units' Limited Common Elements but serve one or more Residential Units shall be made by the Board of Managers and the cost thereof shall be a Common Expense of only the Residential Unit Owners based on their Percentage of Residential Common Interest as reflected in Schedule A of the Declaration.

All maintenance, repairs and replacements to the Commercial Unit(s) and Commercial Unit(s) Limited Common Elements, whether structural or non-structural, ordinary or extraordinary, will be made by the Commercial Unit Owner(s) at its/their sole expense.

All maintenance (including electrical and plumbing repairs located in the Residential Unit and all painting and decorating of the inside of the Residential Units), repairs and replacements to the Residential Units whether structural or nonstructural, ordinary or extraordinary, other than to any General Common Elements or Residential Units' Limited Common Elements contained therein, including windows (including all glass breakage), doors, windows and doors which open from a Residential Unit (except painting and maintenance of the exterior surface which is performed by the Board of Managers on behalf of the Condominium), and repairs to any heating (boiler)/air conditioning/hot water system servicing a Residential Unit, pipes, wires and conduits located within or without the same Residential Unit other than as set forth above shall be made by the respective Residential Unit Owners at their own expense. This would include but not be limited to all painting and decorating to the interior of the Residential Unit, repair or replacement of individual appliances, individual heating and cooling for the Residential Units and the interior side of all entrance doors.

The Board of Managers on behalf of the Condominium shall repair and replace any public utility lines located under or over any Limited Common Element except where such repair or replacement is necessitated because of the negligence or misuse or neglect of the Unit Owner to which the Limited Common Element is restricted in use, in which event such Unit Owner shall make such repairs or replacements at their own expense.

iManage:1566197.1

The Board of Managers shall have the right of access to any Unit and any Limited Common Element for the purpose of making inspections and making any repairs or replacements to any of the General Common Elements and Residential Units' Limited Common Elements contained therein or elsewhere in the Condominium or to remedy any condition which would result in damage to any other Unit or the General Common Elements and/or Residential Units' Limited Common Elements, or which would violate the provisions of any mortgage covering another Unit or for the purpose of complying with any laws, orders, rules or regulations of any governmental body having jurisdiction thereof or for the purpose of carrying out any of its obligations under this Offering Plan, the By-Laws or the Declaration of the Condominium.  Such right of access shall be exercised in such manner as will not unreasonably interfere with the use of the Unit but no prior notice shall be required in the event the Board of Managers shall determine that action is immediately necessary for the preservation or safety of the Condominium or its property, or the Units, or for the safety of Condominium residents or other persons, or required to avoid the suspension of any necessary service to the Condominium.

All replacements, repairs, painting or maintenance, whether made by the Unit Owner or by the Board of Managers to the doors, windows, or the exterior surface of a Unit, or to any generally visible portion of the Common Elements shall be carried out in such a manner so as to conform to the materials, style and color initially provided by the Sponsor and shall comply with the requirements of Article Twentieth, Section 4 of the Declaration of Condominium.

In the event that a Unit Owner fails to maintain, repair or replace its Unit which maintenance, repair or replacement is necessary to protect any of the General Common Elements, Residential Units' Limited Common Elements, any other portions of the Building or any other Unit, the Board of Managers shall have the right to make the necessary maintenance, repair or replacement (after the failure of said Unit Owner to do so after ten (10) days written notice, or written or oral notice of a shorter duration in the event of an emergency situation) and to charge said Unit Owner for the cost of all such repairs and/or maintenance and/or replacement.  In the event that the Board of Managers charges a Unit Owner for repairs, maintenance and/or replacement to any part of their Unit, and the Unit Owner fails to make prompt payment, the Board of Managers shall be entitled to bring suit therein and, in such event, the Unit Owner shall be liable for the reasonable attorneys' fees and cost of such suit or proceeding together with interest on all sums due.

**Section 8. Compensation**.  Managers and officers, as such, shall receive no compensation for their services.

**Section 9. Meetings**.

(a)     The first meeting of each Board newly elected by the Unit Owners shall be held immediately upon adjournment of the meeting at which they were elected, provided a quorum shall then be present, or as soon thereafter as may be practicable.  The annual meeting of the Board of Managers shall be

12                                    iManage:1566197.1

held at the same place as the Unit Owners meetings, and immediately after the adjournment of same, at which time the dates, places and times of regularly scheduled meetings of the Board shall take place.

(b)   Regularly scheduled meetings of the Board may be held without special notice.

(c)   Special meetings of the Board may be called by the President on two (2) days notice to each manager either personally or by mail or telegram. Special meetings shall be called by the President or Secretary in a like manner and on like notice on the written request of at least two (2) managers.

(d)   At all meetings of the Board, a majority of the managers shall be necessary and sufficient to constitute a quorum for the transaction of business, and an act of the majority of the managers present at any meeting at which there is a quorum shall be the act of the Board of Managers, except as may be otherwise specifically provided by statute or by the Declaration or by these By-Laws. If a quorum shall not be present at any meetings of managers, the managers present thereat may adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum shall be present.

(e)   Before or at any meeting of the Board of Managers, any Manager may, in writing, waive notice of such meeting and such waiver shall be deemed equivalent to the giving of such notice. Attendance by a Manager at any meeting of the Board shall be a waiver of notice by him of the time and place thereof. If all the Managers are present at any meeting of the Board, no notice shall be required and any business may be transacted at such meeting.

(f)   Members of the Board may participate in a meeting by means of a conference telephone call or similar communications equipment by means of which all persons participating in such meeting can hear each other and such participation shall constitute presence at such meeting.

**Section 10.  Annual Statement.**  The Board of Managers shall furnish to all Unit Owners and their mortgagees and shall present annually (at the annual meeting, but in no event later than four (4) months after the close of the fiscal year) and when called for by a vote of the Unit Owners at any special meeting of the Unit Owners, a full and clear statement of the business conditions and affairs of the Condominium, including a balance sheet and profit and loss statement verified by an independent public accountant and a statement regarding any taxable income attributable to the Unit Owner and a notice of the holding of the annual Unit Owners meeting.

13

**Section 11.  Fidelity Bonds**.  The Board of Managers shall require that all officers and employees of the Condominium handling or responsible for Condominium funds shall furnish adequate fidelity bonds.   The premiums on such bonds shall be a common expense.

**Section 12.  Management Agent**.  The Board of Managers may employ for the Condominium a management agent under a term contract or otherwise at a compensation established by the Board, to perform such duties and services as the Board shall authorize, including, but not limited to, all of the delegable duties of the Board listed in this Article.

**Section 13.  Liability of the Board of Managers, Officers and Unit Owners**.  No Member of the Board of Managers or officer of the Condominium shall have any personal liability to the Condominium or to any Unit Owner for damages for any breach of duty in his or her capacity as a Member of the Board or officer, provided that this provision does not eliminate or limit the liability of a Member of the Board or officer if a judgment or other final adjudication adverse to him or her establishes (a) that his or her acts or omissions were in bad faith or involved intentional misconduct or a knowing violation of law, or (b) that he or she personally gained in fact a financial profit or other advantage to which he or she was not legally entitled.

The Condominium, through the Unit Owners, shall indemnify to the fullest extent permitted by law any person made, or threatened to be made, a party to an action or proceeding, whether civil or criminal, including an action by or in the right of the Condominium to procure a judgement in its favor or an action other than one by or in the right of the Condominium and including an action by or in the right of any corporation of any type or kind, domestic or foreign, or any partnership, joint venture, trust, employee benefit plan or other enterprise, which any Member of the Board or officer of the Condominium served in any capacity at the request of the Condominium, by reason of the fact that the Board Member, the Board Member's testator or intestate, was a Member of the Board or officer of the joint venture, trust, employee benefit plan or other enterprise in any capacity; provided that no indemnification may be made to or on behalf of any Member of the Board or officer if a judgement establishes that his or her acts were committed in bad faith or were the result of active and deliberate dishonesty and were material to the cause of action so adjudicated, or that he or she personally gained in fact a financial profit or the advantage to which he or she was not legally entitled.

The Unit Owners shall indemnify and hold harmless each of the members of the Board of Managers against all contractual liability to others arising out of contracts made by the Board of Managers on behalf of the Condominium unless any such contract shall have been made in bad faith or contrary to the provisions of the Declaration or of these By-Laws. It is intended that the Members of the Board of Managers shall have no personal liability with respect to any contract made by them on behalf of the Condominium (except as Unit Owners). It is understood and permissible for the original Board of Managers, who may be members of or be employed by the Sponsor, to contract with the Sponsor and affiliated corporations and entities without incurring any liability for self-dealing. It is also

14

iManage:1566197.1

intended that the liability of any Unit Owner arising out of any contract made by the Board of Managers or out of the aforesaid indemnity in favor of the Member of the Board of Managers shall be limited to such proportion of the total liability thereunder as his or her interest in the Common Elements bears to the interest of all the Unit Owners in the Common Elements. Every agreement made by the Board of Managers or by the managing agent or by the manager on behalf of the Condominium shall provide that the Members of the Board of Managers, or the managing agent, or the manager, as the case may be, are acting only as agent for the Unit Owners and shall have no personal liability thereunder (except as Unit Owners).

Each Unit Owner's liability pursuant to this Section shall be limited to the percentage of General Common Interest for each Unit as it pertains to the General Common Elements. Each Residential Unit Owner's liability pursuant to this Section shall be limited to the percentage of Residential Common Interest for each Residential Unit as it pertains to the Residential Units' Limited Common Elements.

## ARTICLE IV. OFFICERS

**Section 1. Elective Officers.** The officers of the Condominium shall be chosen by the Board of Managers and shall be a President, a Vice President, a Secretary and a Treasurer. The Board of Managers may also choose one (1) or more Assistant Secretaries and Assistant Treasurers and such other officers as in their judgment may be necessary. All officers must be Residential Unit Owners, members of the first Board of Managers, designated members of the Board of Managers of the Sponsor or the Commercial Unit(s) representative to the Board of Managers. Two (2) or more offices may be held by the same person, except that the President may only hold the office of President.

**Section 2. Election.** The Board of Managers at its first meeting after each annual Unit Owners Meeting shall elect a President, a Vice-President, a Secretary and a Treasurer. Only the President must be a member of the Board.

**Section 3. Appointive Officers.** The Board may appoint such other officers and agents as it shall deem necessary who shall hold their offices for such terms and shall exercise such powers and perform such duties as shall be determined from time to time by the Board.

**Section 4. Term.** The officers shall hold office until their successors are chosen and qualify in their stead. Any officer elected or appointed by the Board of Managers may be removed with or without cause, at any time, by the affirmative vote of a majority of the whole Board of Managers. If the office of any officer becomes vacant for any reason, the vacancy shall be filled by the Board of Managers.

**Section 5. The President.** The President shall be the chief executive officer of the Condominium; the President shall preside at all meetings of the Unit Owners and

15

Managers, the President shall be an ex-officio member of all standing committees, shall have general and active management of the business of the Condominium, shall see that all orders and resolutions of the Board are carried into effect and shall have such other powers and duties as are usually vested in the office of President of a stock corporation organized under the Business Corporation of the State of New York.

**Section 6.  The Vice-President.**  The Vice President shall take the place of the President and perform the President's duties whenever the President shall be absent or unable to act and shall have such other powers and duties as are usually vested in the office of Vice President of a stock corporation organized under the Business Corporation Law of the State of New York.

**Section 7.  The Secretary**.  The Secretary and/or Assistant Secretary shall attend all sessions of the Board and all Unit Owners meetings and record all votes and the minutes of all proceedings in a book to be kept for that purpose and shall perform like duties for the standing committees when required. The Secretary shall give, or cause to be given, notice of all Unit Owners meetings and special meetings of the Board of Managers, and shall perform such other duties as may be prescribed by the Board of Managers or by the President, under whose supervision the Secretary shall be.

**Section 8.  The Treasurer.**  The Treasurer shall have the custody of the Condominium funds and securities and shall keep full and accurate chronological accounts of receipts and disbursements in books belonging to the Condominium including the vouchers for such disbursements, and shall deposit all monies and other valuable effects in the name and to the credit of the condominium in such depositories as may be designated by the Board of Managers.

The Treasurer shall disburse the funds of the Condominium as may be ordered by the Board, making proper vouchers for such disbursements and shall render to the President and Managers, at the regular meeting of the Board or whenever they may require it, an account of all transactions as Treasurer and of the financial condition of the Condominium.

The Treasurer shall keep detailed financial records and books of account of the Condominium, including a separate account for each Residential Unit which, among other things, shall contain the amount of each assessment of common charges against such Residential Unit, the date when due, the amounts paid thereon and the balance remaining unpaid.

**Section 9.  Agreements, etc.**  All agreements and other instruments shall be executed by the President or such other person as may be designated by the Board of Managers.

16

## ARTICLE V.  NOTICES

**Section 1.  Definition.**  Whenever under the provisions of the Declaration or of these By-Laws, notice is required to be given to the Board of Managers, any manager or Unit Owner, it shall not be construed to mean personal notice; but such notice may be given in writing, by mail, by depositing the same in a post office or letter box in a postpaid sealed wrapper, addressed to the Board of Managers, such manager or Unit Owner at such address as appears on the books of the Condominium.

**Section 2. Service of Notice-Waiver.**  Whenever any notice is required to be given under the provisions of the Declaration, or of these By-Laws, a waiver thereof, in writing, signed by the person or persons entitled to such notice, whether before or after the time stated therein, shall be deemed the equivalent thereof.

## ARTICLE VI.  FINANCES

**Section 1.   Checks**.   All checks or demands for money and notes of the Condominium shall be signed by the President and Treasurer, or by such other officer or officers or such other person or persons as the Board of Managers may from time to time designate.

**Section 2.  Assessments**.  The Board of Managers shall, from time to time, but at least annually, fix and determine the budget representing the sum or sums necessary and adequate for the continued operation of the Condominium and shall send a copy of the budget and supplement to the budget to every Unit Owner.  They shall determine the total amount required, including the operational items such as insurance, repairs, reserves, betterments, maintenance of the General Common Elements, Residential Units' Limited Common Elements and other Common Expenses as well as charges to cover any deficits from prior years.

The total annual requirements shall be assessed as a single sum against all Units and prorated against each of said Units according to the provisions of Section 8 hereof. Special assessments, should such be required, shall be levied and paid in the same manner as herein above provided for regular assessments.

Said assessments shall be payable monthly or such other manner as ordered by the Board of Managers and shall be referred to as Common Charges.  Special Common Charge assessments, should such be required, shall be levied and paid in the same manner as herein above provided for regular assessments.

The Unit Owner agrees to pay promptly when due the monthly Common Charges and all special Common Charge assessments assessed against the Residential Unit Owner's own Residential Unit.  In the event any Unit Owner fails to make payment of the

iManage:1566197.1

Unit Owner's Common Charge payment, the Unit Owner who owns such Unit shall be obligated to pay (a) a "late charge" of $.15 for each $1.00 of such amounts which remain unpaid for more than ten (10) days from their due date (although nothing herein shall be deemed to extend the period within which such amounts are to be paid) and (b) interest at the rate of two (2%) percent per month (but in no event in excess of the maximum rate theretofore collected on such amounts) computed from the due date thereof, and (c) all expenses, including, without limitation, attorneys' fees paid or incurred by the Board or by any Managing Agent in any proceeding brought to collect such unpaid Common Charges or in an action to foreclose the lien on such Unit Owner's Unit arising from said unpaid Common Charges in the manner permitted by applicable law. All such "late charges," interest and expenses shall be added to and shall constitute Common Charges payable by such Unit Owner.

In addition, in the event of a default in payment of Common Charge assessments by any Unit Owner, the Board, at its sole option, may declare the Common Charge assessment on said Unit Owner's Residential Unit for the balance of the fiscal year immediately due and payable. Prior to making any such declaration following a default the Board shall send notice to the delinquent Unit Owner and the mortgagee, if any, of such Residential Unit giving the Unit Owner a five (5) day grace period in which to make the late payment.

The Board may take action to collect any Common Charges due from any Residential Unit Owner which remains unpaid ninety (90) days from its due date by way of foreclosure of the lien on such Unit in accordance with Section 339 of the Real Property Law or otherwise.

No Unit Owner shall be liable for any Common Charges which accrue against the Unit Owner's Residential Unit subsequent to a sale, transfer or other conveyance by the Unit Owner in accordance with these By-Laws and the Declaration. A purchaser of a Unit (other than a mortgagee or a purchaser at a foreclosure sale) shall be liable for the payment of all future Common Charges assessed against the Unit and unpaid Common Charges assessed against the Unit at the time of the purchase.

**Section 3. Foreclosures of Liens for Unpaid Common Charges.** The Board shall have the power to purchase any Unit at a foreclosure sale resulting from any action brought by the Board to foreclose a lien on the Unit because of unpaid Common Charges. In the event of such purchase, the Board shall have the power to hold, lease, mortgage, vote, sell or otherwise deal with the Unit. A suit to recover a money judgment for unpaid Common Charges shall also be obtainable separately without waiving the lien on the Residential Unit. In either event the Unit Owner shall be liable for all costs of suit, including reasonable attorneys' fees.

**Section 4. Statement of Common Charges.** Upon the written request of any Unit Owner or their mortgagee, the Board shall promptly furnish such Unit Owner or their

iManage:1566197.1

mortgagee with a written statement of the unpaid common charges due from such Unit Owner.

**Section 5.   Liability for Utilities.**   Any utility, including gas and electricity, consumed in the Units shall be an expense of each individual Unit Owner.

**Section 6. Operating Account.** There shall be established and maintained a cash deposit account to be known as the "Operating Account," into which shall be deposited the operating portion of all monthly and special assessments as fixed and determined for all Residential Units. Disbursements from said account shall be for the general need of the operation including, but not limited to, wages, repairs, betterments, maintenance and other operating expenses of the Common Elements and for the purchase, lease, sale or other expenses resulting from the purchase or lease of Units.

**Section 7.  Other Accounts.**  The Board shall maintain any other accounts it shall deem necessary to carry out its purpose.

**Section 8.   Determination of Common Expenses and Fixing of Common Charges.**  The Residential Units may have their own staff of employees and will be operated by the Board of Managers independently of the Commercial   Unit.   The Commercial Units will be separately operated by the Commercial Unit Owner(s) at  the Commercial Unit Owner(s) sole expense.

The Board of Managers shall from time to time, and at least annually, prepare a budget for the operation of the General Common Elements, and General Common Expenses, the Residential Units' Limited Common Elements and Residential Units' Common Expenses and determine the amount of the Common Charges payable by the Residential and Commercial Unit Owners to meet said expenses. The Board of Managers shall assess the Residential Units based on the Residential Units' Percentage of Residential Common Interest as reflected in Schedule A of the Declaration and the Board of Managers shall assess the Commercial Units based upon their Percentage of General Common Interest as reflected in Schedule A of the Declaration.

In addition, to basing charges in proportion to each Units' respective Common Interest as detailed in the above paragraphs, the Board of Managers may also make allocations and assessments of Common Charges to the General Common Elements in accordance with sub-metering, contract allocations and usage (both projected and actual) based on special or exclusive use or availability or exclusive control of particular Units or Common Elements by particular Unit Owners.

The Residential Units' Common Expenses shall include among other things, the debt service, allocable common charges and real estate taxes associated with the Superintendent's Unit.

19

iManage:1566197.1

The General Common Expenses of the Condominium shall include, among other things, the cost of all insurance premiums on all policies of insurance required to be or which have been obtained by the Board of Managers pursuant to the provisions of Article VIII and the fees and disbursements of the Insurance Trustee.  The General Common Expenses may also include such amounts as the Board of Managers may deem proper for the operation and maintenance of the General Common Elements, including, without limitation, an amount for working capital of the Condominium, for a general operating reserve, for a reserve fund for replacements, and to make up any deficit in the Common Expenses for any prior year.  The Common Expenses may also include such amounts as may be required for the purchase or lease by the Board of Managers or its designee, corporate or otherwise, on behalf of all Unit Owners, of any Unit whose Owner has elected to sell or lease such Unit or of any Residential Unit which is to be sold at a foreclosure or other judicial sale.

The owner of the Commercial Units will pay a proportionate share of the General Common Expenses (computed in accordance with their respective Percentage of General Common Interest or based on submetering, contract allocations and usage (both projected and actual) so long as such allocations are reasonable under the circumstances and are in accordance with applicable provisions of law) of the cost of insurance and repairs and maintenance of equipment servicing the General Common Elements.  The portion of any insurance premium which may result in a higher premium as a result of the specific use of a Commercial Unit shall be borne by the respective Commercial Unit Owner pursuant to Section 339-bb of the Real Property Law of the State of New York.  The items which the Commercial Units will be obligated to contribute as part of their Common Charges shall include any part of the Condominium they share with or utilize with the Residential Unit Owners and may vary on an annual basis.

An Owner of a Residential Unit will pay their proportionate share of the General Common Expenses and Residential Common Expenses computed in accordance with their respective Percentage of Residential Common Interest as reflected in Schedule A of the Declaration.

The Board of Managers shall advise all Unit Owners promptly, in writing, of the amount of Common Charges and Expenses payable by each of them, respectively, as determined by the Board of Managers, as aforesaid, and shall furnish copies of each budget on which such Common Charges and expenses are based, to all Unit Owners.

If in the future there are any categories of expenses other than those provided for above and other than described in the original budget disclosed in the Offering Plan or any future budget that the Commercial Units are required to contribute to the Condominium, the Commercial Unit Owner(s)  shall only bear a proportionate share (computed in accordance with their respective percentage of General Common Interest or based on sub-metering, contract allocations and usage (both projected and actual) so long as such allocations are reasonable under the circumstances and are in accordance with applicable provisions of law) if such expenses are for services which directly benefit the Commercial

iManage:1566197.1

Units, but in any event in an amount sufficient to cover their proportionate share of expenses directly attributable to such Commercial Unit.

Any dispute relating to the Common Expenses and Common Charges to be contributed by the Commercial Unit Owner shall be submitted to arbitration in accordance with the provisions of Article XII.

The Sponsor or its designee shall be responsible for the Common Charges assessed against each Unit owned by it until such Unit is sold to a bona fide purchaser.

Each Residential Unit and Residential Unit Owner assigned a Storage Bin as a Limited Common Element for their exclusive use shall contribute a maintenance fee of $20 per month to the Condominium to cover the cost of the operation, maintenance and repair of the Storage Bins. In the event the monthly amount is insufficient to cover the allocable expenses attributed to the Storage Bins, the Residential Members of the Board of Managers can increase the monthly amount, but in no event shall such increase exceed the actual allocable share of the Common Expenses attributable to the Storage Bins based on their overall square footage in relation to the overall square footage of the Residential portion of the Building.

## ARTICLE VII. INSURANCE AND INSURANCE TRUSTEE

**Section 1. Insurance to be Carried by the Board**. The Board of Managers shall be required to obtain and maintain, to the extent obtainable, the following insurance: fidelity insurance covering all officers, Board members, employees and the managing agent or agents who handle funds of the Condominium; fire insurance with extended coverage, water damage, vandalism and malicious mischief endorsements, insuring the Building in the Condominium (but not including furniture, furnishings or other personal property supplied or installed by Unit Owners), together with all heating, air-conditioning and other service machinery, contained therein, covering the interest of the Condominium, the Board of Managers and all Unit Owners and their mortgagees, as their interest may appear, in an amount equal to the full replacement value of the Building. Each of such policies shall contain a New York standard mortgage clause in favor of each mortgagee of a Unit which shall provide that the loss, if any, thereunder shall be payable to such mortgagee as its interest may appear, subject, however, to the loss payment provisions in favor of the Board of Managers and the Insurance Trustee hereinafter set forth; and such other insurance as the Board of Managers may determine. All such policies shall provide that adjustment of loss shall be made by the Board of Managers with the approval of the Insurance Trustee, and that the net proceeds thereof, if $50,000 or less, shall be payable to the Board of Managers, and if more than $50,000 shall be payable to the Insurance Trustee.

The fire insurance will commence with the closing of title to the first Unit in an amount as required by the mortgagee of such Unit and such amount will be increased upon

iManage:1566197.1

the closing of title to all Units and until the first meeting of the Board of Managers following the first Unit Owners meeting, such amount shall be at least in the sum of $80,000,000.

All policies of physical damage insurance shall contain waivers of subrogation and of any reduction of pro rata liability of the insurer as a result of any insurance carried by Unit Owners or of the invalidity arising from any acts of the insured or any Unit Owners, and shall provide that such policies may not be canceled or substantially modified without at least ten (10) days prior written notice to all of the insured, including all mortgagees of Units. Duplicate originals of all policies of physical damage insurance and of all renewals thereof together with proof of payment of premiums, shall be delivered to all mortgagees of Units at least ten (10) days prior to expiration of then current policies. Prior to obtaining any policy of fire insurance or any renewal thereof, the Board of Managers shall obtain an appraisal from a fire insurance company or otherwise of the full replacement value of the Building, including all of the Common Elements appurtenant thereto for the purpose of determining the amount of fire insurance to be effected pursuant to this Section.

The Board of Managers shall also be required to obtain and maintain, to the extent obtainable, public liability insurance in such limits as the Board of Managers may from time to time determine, covering each member of the Board of Managers, the managing agent and each Unit Owner. Such public liability coverage shall also cover cross liability claims of one insured against another. Until the first meeting of the Board of Managers following the first annual Unit Owners meeting, such public liability insurance shall be an aggregate of $2,000,000 and $1,000,000, each occurrence, covering all claims for bodily injury and for property damage arising out of one occurrence. Such public liability insurance shall commence on the closing of title to the first Unit.

The portion of any insurance premium which results in an increase in the premium as a result of the specific use of a Commercial Unit shall be borne by the respective Commercial Unit Owner pursuant to Section 339-bb of the Real Property Law of the State of New York.

Unit Owners shall not be prohibited from carrying other insurance for their own benefit provided that such policies contain waivers of subrogation and further provided that the liability of the carriers issuing insurance procured by the Board of Managers shall not be affected or diminished by reason of any such additional insurance carried by any Unit Owner.

**Section 2. The Insurance Trustee**. A New York Bank or Trust Company shall be the Insurance Trustee and all costs thereof shall constitute a General Common Expense of the Condominium. In the event the Insurance Trustee resigns or fails to qualify, the Board of Managers shall designate a new Insurance Trustee which shall be a bank or trust company located in the State of New York.

**Section 3. Restoration or Reconstruction After Fire or Other Casualty.** In the event of damage to or destruction of the Building as a result of fire or other casualty

22

iManage:1566197.1

(unless seventy-five [75%] percent or more of the Units are destroyed or substantially damaged and seventy-five [75%] percent or more of the Unit Owners do not duly and promptly resolve to proceed with repair or restoration), the Board of Managers shall arrange for the prompt repair and restoration of the Building (including any damaged Unit, and any kitchen or bathroom fixtures initially installed therein by the Sponsor, any heating, air conditioning or other service machinery which is covered by insurance but not including any wall, ceiling or door decorations or coverings or other furniture, furnishings, fixtures or equipment installed by Unit Owners in the Units), and the Board of Managers or the Insurance Trustee, as the case may be, shall disburse the proceeds of all insurance policies to the contractors engaged in such repair and restoration in appropriate progress payments. Any cost of such repair and restoration in excess of the insurance proceeds that affects the General Common Elements shall constitute a General Common Expense and the Board of Managers may assess all the Unit Owners for such deficit as part of the Common Charges. Any cost of such repair and restoration in excess of the insurance proceeds that affects only the Residential Units or the Residential Units' Limited Common Elements shall constitute a Residential Common Expense and the Board of Managers may assess all the Residential Unit Owners based on their percentage of Residential Common Interest for such deficit as part of their Common Charges.

If seventy-five (75%) percent or more of the Units are destroyed or substantially damaged and seventy-five (75%) percent or more of the Unit Owners do not duly and promptly resolve to proceed with repair or restoration, the Property shall be subject to an action for partition at the suit of any Unit Owner or lienor, as if owned in common in which event the net proceeds of sale, together with the net proceeds of insurance policies (or if there shall have been a repair or restoration pursuant to the first paragraph of this Section 3, and the amount of insurance proceeds shall have exceeded the cost of such repair or restoration then the excess of such insurance proceeds) shall be divided by the Board of Managers or the Insurance Trustee, as the case may be, among all the Unit Owners in proportion to the irrespective Percentage of General Common Interest, after first paying out of the share of each Unit Owner the amount of any unpaid liens on their Unit, in the order of the priority of such liens.

If the proceeds of physical damage insurance or condemnation awards on account of a Taking are less than $50,000 and the loss involves the Commercial Units or Commercial Units Limited Common Elements such proceeds shall be paid (i) entirely to the owner of such Commercial Unit, if no part of the General Common Elements, other Units, or the other Limited Common Elements are involved or (ii) to the owner of the Commercial Unit, and the Board of Managers if the General Common Elements, the Commercial Unit, Commercial Unit Limited Common Elements or the other Limited Common Elements are involved. In the latter case the net insurance proceeds or condemnation awards shall be shared by the Commercial Unit Owner and the Board of Managers in proportion to the cost of repairing and restoring the Commercial Units (and/or the Commercial Limited Common Elements), the General Common Elements, the other Limited Common Elements and the other Units, respectively.

23

iManage:1566197.1

Notwithstanding the foregoing, if only the Commercial Unit(s) (including the Commercial Limited Common Elements) is destroyed or damaged by fire or other casualty or taken in a Taking, the owner of the applicable Commercial Unit will alone make all arrangements for the prompt repair and restoration thereof, and if the net insurance proceeds or condemnation awards are insufficient to cover, or exceed, the cost, the applicable Commercial Unit Owner or Commercial Unit Owners will bear the entire amount of the deficit or shall receive all of the excess.  Similarly, if only the Residential and/or the Residential Units' Limited Common Elements are damaged or destroyed by fire or other casualty or taken in a Taking and the insurance proceeds or condemnation awards are not sufficient to cover, or exceed, the cost of repairs and restoration, the deficit or surplus will be borne or shared entirely by all the Residential Unit Owners in proportion to their Residential Common Interest in the Residential portion of the Building.  If the damage or destruction or Taking affects the Residential Unit (and/or the Residential Units' Limited Common Elements), the Residential Units, the Residential Units' Limited Common Elements and the General Common Elements, or any combination thereof, any deficit or surplus of insurance proceeds or condemnation awards shall be borne or shared by all Unit Owners in the proportion that the cost of repairing the damage, destruction or Taking to their respective Units and Limited Common Elements bears to the total cost of repairing all damage or destruction.  However, the owners of the Commercial Unit will still have the right to make all arrangements for the prompt repair and restoration of their Units.

## ARTICLE VIII.  HOUSE RULES

**Section 1.**  In addition to the other provisions of these By-Laws, the following house rules and regulations together with such additional rules and regulations as may hereafter be adopted by the Board of Managers shall govern the use of the Units and the conduct of all residents thereof.

**Section 2.  Use.**

(a)  All Residential Units shall be used for residential purposes only.  All rentals, other than rentals by the Sponsor, must be subject to local zoning ordinances and must comply with the requirements contained in these By-Laws under Article XI, Section 2.

(b)  The Commercial Units may be used for any lawful purposes, including, without limitation, retail stores, bank, restaurants and commercial and professional offices.  The Board of Managers will not have control over the uses of the Commercial Units.

(c)  Storage Bin Limited Common Elements may only be utilized for storage of household items.  No flammable, combustible or explosive fluid, material, chemical or substance is permitted to be stored in a storage bin.

24

**Section 3.** Unit Owners, members of their families, their employees, guests and their pets, if permitted, shall not use or permit the use of the premises in any manner which would be illegal, or in such a way as to be injurious to the reputation of the Condominium.

**Section 4.**  The Common Elements shall not be obstructed, littered, defaced or misused in any manner.

**Section 5.**  Every Unit Owner shall be liable for any and all damage to the Common Elements and the property of the Condominium, which shall be caused by said Unit Owner or such other person for whose conduct the Unit Owner is legally responsible.

### Section 6. Maintenance.

(a)   Every Unit Owner must perform promptly all maintenance and repair work to the Unit Owner's own Unit and any Limited Common Element for the Unit Owner's exclusive use, if not a Condominium obligation, which, if omitted, would affect the Community in its entirety or in a part belonging to other Unit Owners, or the Building of which the Unit forms a part, the Unit Owner being expressly responsible for the damages and liabilities that the Unit Owner's failure to do so may engender.

(b)   All the repairs to internal installations of the Unit located in and servicing only that Unit, such as telephones and sanitary installations shall be at the Unit Owner's expense.

### Section 7.  Structural Changes.

(a)   No Residential Unit Owner shall make any structural or mechanical addition, alteration or improvement (of either a temporary or permanent nature) in or to their Residential Unit without the prior written approval of a majority of the Residential Members of the Board of Managers on behalf of the entire Board, which consent may be unreasonably withheld.   The Board of Managers shall have the obligation to answer any written request by a Residential Unit Owner for approval of a proposed structural addition, alteration or improvement in such Residential Unit Owner's Residential Unit within forty-five (45) days after such request is received, and failure to do so within the stipulated time shall constitute a denial by the Board of Managers of the proposed structural addition, alteration or improvement.   No Residential Unit Owner shall make any structural addition, alteration or improvement in or to any Residential Unit without first (1) obtaining and maintaining during the course of such work such insurance as the Board of Managers may reasonably prescribe and providing the Board with a certificate of insurance prior to the commencement of the work, (2) executing and delivering to the Board of Managers an agreement, in form and

25

substance reasonably satisfactory to the Board, setting forth the reasonable terms and conditions under which such alteration, addition or improvement may be made, including, without limitation, the days and hours during which any such work may be done and (3) executing and delivering to the Board of Managers an agreement indemnifying and holding harmless the Board, its members and officers, and all Residential Unit Owners of the Condominium from and against any liability, cost or expense arising out of or connected to such work.  In the event the Board of Managers chooses to have the proposed structural addition, alteration or improvement reviewed by an independent architect or engineer, the Residential Unit Owner shall pay the charges of such architect or engineer.  The Residential Unit Owner shall also bear the cost of any increased taxes or insurance premiums resulting from the structural alterations, additions or improvements.

Any application to any department of the City of White Plains or any other governmental authority for a permit to make a structural addition, alteration or improvement in or to any Residential Unit  for its exclusive use shall be completed by the Residential Unit Owner and executed by the Board of Managers only, without however, incurring any liability on the part of the Board of Managers or any member of the Board of Managers to any contractor, subcontractor or materialmen on account of such structural addition, alteration or improvement or to any person having any claim for injury to person or damage to property arising therefrom.

These provisions shall not apply to Residential Units owned by the Sponsor or its designee until such Residential Units shall have been initially conveyed by the Sponsor or such designee.

(b)     A Commercial Unit Owner shall be permitted to make a structural addition, alteration or improvement (of either a temporary or permanent nature) in or to their Commercial Unit, or any Limited Common Element for its exclusive use, without the prior written approval of the Board of Managers.  However, the Commercial Unit Owner must notify the Board of Managers at least forty-five (45) days prior to any such structural addition, alteration or improvement and no Commercial Unit Owner shall make any structural addition, alteration or improvement in or to any Commercial Unit or any Limited Common Element for its exclusive use without first (1) obtaining and maintaining during the course of such work such insurance as the Board of Managers may reasonably prescribe and providing the Board with a certificate of insurance prior to the commencement of the work, (2) executing and delivering to the Board of Managers an agreement, setting forth the terms and conditions under which such alteration, addition or improvement may be made, including, without limitation, the days and hours during which any such work may be done and (3) executing and delivering to the Board of Managers an agreement indemnifying and holding harmless the Board, its

26

members and officers, and all Unit Owners of the Condominium from and against any liability, cost or expense arising out of or connected to such work.   The Commercial Unit Owner shall also bear the cost of any increased taxes or insurance premiums resulting from the structural alterations, additions or improvements.

Any application to any department of the City of White Plains or any other governmental authority for a permit to make a structural addition, alteration or improvement in or to any Commercial Unit or Limited Common Element for its exclusive use shall be completed by the Commercial Unit Owner and executed by the Board of Managers only, without however, incurring any liability on the part of the Board of Managers or any of them to any contractor, subcontractor or materialmen on account of such structural addition, alteration or improvement or to any person having any claim for injury to person or damage to property arising therefrom.

### Section 8.  Rights and Regulations Applicable all Unit Owners

(a)     It is prohibited to hang garments, rugs, etc., from the windows, or from the Building or to string clothes lines on or over the General Common Elements (including any Limited Common Element) or to use any of the Common Elements for storage purposes.

(b)     No Unit Owner shall paint the exterior surfaces of the windows, walls or doors opening out of their Unit.

(c)     No television or radio antenna or any other type of receiving or transmitting antenna or structure shall be erected on the exterior of the Building without the prior written consent of the Board of Managers.

(d)     Each Unit Owner shall keep their Unit and its appurtenant Limited Common Element in a good state of preservation, condition, repair and cleanliness in accordance with the terms of the By-Laws.

iManage:1566197.1

**Section 9.   House Rules and Regulations for the Residential Units and Residential Units' Limited Common Elements.**

(a)    No sign, notice, advertisement, or illumination (including, without limitation, "For Sale," "For Lease", or "For Rent" signs) shall be inscribed or exposed on or at any window or other part of the Building, except such as are permitted pursuant to the terms of Declaration and/or By-Laws or shall have been approved in writing by the Board or the Managing Agent. Nothing shall be projected from any window of a Residential Unit without similar approval.

(b)    No clothes, sheets, blankets, laundry of any kind or other articles shall be hung out of a Residential Unit.   The Common Elements and Limited Common Elements shall be kept free and clear of rubbish, debris and other unsightly materials. No rugs or mops shall be shaken or hung from or on any of the windows, nor shall a Residential Unit Owner sweep or throw or permit to be swept or thrown therefrom any dirt or other substance.

(c)    No Residential Unit Owner shall paint the exterior surfaces of the windows, walls or doors opening out of their Residential Unit.

(d)    No animals shall be kept or harbored in the Condominium or any Unit except for the following:  one (1) dog weighing sixty (60) pounds or less; one (1) household cat; one (1) domestic bird and fish.  No exceptions will be permitted unless the same in each instance be expressly permitted in writing by the Board of Managers of the Condominium.  The Board of Managers may require the permanent removal of any animal kept in a Residential Unit that is not in compliance with the above as well as any animal causing or creating a nuisance or unreasonable disturbance or noise upon three (3) days written notice from the Board of Managers.  In no event shall any animal be permitted in any of the public corridors, lobbies or outdoor plaza of the Condominium unless carried or on leash and in compliance with the local and municipal rules and regulations regarding pets.  No pets will be allowed in the outdoor Recreation Area. All Residential Unit Owners shall be responsible for picking up and disposing of their pets' waste and for any damage caused by their pets to any Common Elements of the Condominium.

(e)    No television or radio antenna or any other type of receiving or transmitting antenna or structure shall be erected on the exterior Residential Unit without the prior written consent of the Board of Managers. The Board of Managers may adopt such rules and regulations pertaining to antenna so as to comply with the Federal Communications Commission rules adopted on October 14, 1996.

(f)    All radio, television, or other electrical equipment of any kind or nature installed or used in each Residential Unit shall fully comply with all rules,

28

iManage:1566197.1

regulations, requirements, or recommendations of the New York Board of Fire Underwriters and the public authorities having jurisdiction, and the Residential Unit Owner alone shall be liable for any damage or injury caused by any radio, television, or other electrical equipment.

(g) No ventilator or air conditioning device shall be installed in any Residential Unit without the prior written approval fo the Board, which approval may be granted or refused in the sole discretion of the Board.

(h) No construction, change or alteration to the exterior or interior of the Residential Units or color of the Residential Units shall be commenced, erected, replaced, repaired or maintained, nor shall any exterior or interior addition to, or change or alteration thereto, be made unless the Residential Unit Owner if permitted, complies with requirements of Article Twentieth (c) of the Declaration of Condominium and Article VIII, Section 7 of these By-Laws.

(i) Any Residential Unit Owner who sells their Residential Unit shall notify the Board of Managers, providing the name and address of the new Residential Unit Owner, within thirty (30) days of the execution of the Purchase Agreement of the sale of the Residential Unit for the new Purchaser.

(j) All Residential Unit Owners who mortgage or refinance their Residential Unit shall be required to provide the Board of Managers with the name and address of the mortgagee within thirty (30) days of the issuance of the mortgage.

(k) The Board of Managers shall, at the request of the mortgagee of the Residential Unit, report any delinquent assessments due from the Owner of such Residential Unit.

(l) Every Residential Unit Owner shall be liable for any and all damage to the Common Elements, which shall be caused by said Residential Unit Owner, the Residential Unit Owner's permitted lessees and occupants of Residential Units, their respective family members and guests and such other person for whose conduct the Residential Unit Owner is legally responsible.

(m) No Residential Unit Owner shall make, cause, or permit any unusual, disturbing, or objectionable noises or odors to be produced upon or to emanate from their Residential Unit or permit anything to be done therein that will interfere with the rights, comforts, or conveniences of the other Residential Unit Owners. No Residential Unit Owner shall play upon or suffer to be played upon any musical instrument, or shall operate or permit to be operated a phonograph, radio, television set, or other loudspeaker in such Residential Unit Owner's Unit between midnight and the following 8:00

29

A.M., if the same shall disturb or annoy other occupants of the Building, and in no event shall any Residential Unit Owner practice or suffer to be practiced either vocal or instrumental music between the hours of 10:00 P.M. and the following 9:00 A.M. No construction, repair work, or other installation involving noise shall be conducted in any Residential Unit except on weekdays (not including legal holidays) and only between the hours of 8:00 A.M. and 5:00 P.M., unless such construction or repair work is necessitated by an emergency or approved by the Board of Managers.

(n)    Each Residential Unit Owner shall keep their Residential Unit in a good state of preservation and cleanliness, and shall not sweep or throw or permit to be swept or thrown therefrom, or from the doors, or windows thereof, any dirt or other substance.

(o)    No Residential Unit Owner nor any of the Residential Unit Owner's agents, servants, employees, licensees, or visitors shall at any time bring into or keep in their Residential Unit any flammable, combustible or explosive fluid, material, chemical or substance, except for normal household use.

(p)    If any key or keys are entrusted by a Residential Unit Owner or occupant or by the Residential Unit Owner's agent, servant, employees, licensee or visitor to any employee of the Board of Managers, whether for such Residential Unit or an automobile or other type of personal property, the acceptance of the key shall be at the sole risk of such Residential Unit Owner or occupant, and the Board of Managers shall not be liable for injury, loss or damage of any nature whatsoever directly or indirectly resulting therefrom or connected therewith.

(q)    The Board or the Managing Agent may retain a pass-key to each Residential Unit.  If any lock is altered or a new lock is installed, the Board or the Managing Agent shall be provided with a key thereto immediately upon such alteration or installation.  If the Residential Unit Owner is not personally present to open and permit an entry to their Residential Unit at any time when an entry therein is necessary or permissible under these Rules and Regulations or under the By-Laws, and has not furnished a key to the Board or the Managing Agent, then the Board or Managing Agent or their agents (but, except in an emergency, only when specifically authorized by an officer of the Condominium or an officer of the Managing Agent) may forcibly enter such Residential Unit without liability for damages or trespass by reason thereof (if, during such entry, reasonable care is given to such Residential Unit Owner's property).

(r)    No Residential Unit Owner shall install any plantings in the General Common Elements or Residential Units' Limited Common Elements  without the prior written approval of the Board. It shall be the responsibility of the Residential

iManage:1566197.1

Unit Owner to maintain all plantings in the Residential Units or to prevent any damage to floors and walls.  Residential Unit Owners shall pay the cost of any repairs rendered necessary, or damage caused, by such plantings.

(s)     Residential Unit Owners will faithfully observe the procedures established from time to time by the Board of Managers or the Managing Agent with respect to services provided and the management of the Building.

(t)     Any consent or approval given under these Rules and Regulations may be added to, amended or repealed at any time by resolution of the Board of Managers.

(u)     All Residential Unit Owners shall keep their thermostats at a minimum of 60 degrees Fahrenheit to prevent freezing of pipes. Any Residential Unit Owner failing to adhere to this requirement shall be responsible for any damage done to the Common Elements of the Condominium and any other Residential Unit.

(v)     The entrances, passages, public halls, elevators, vestibules, corridors and stairways of the Residential portion of the Condominium will not be obstructed or used for any purpose other than ingress to and egress from the Residential Units.

(w)     No article (including, but not limited to, garbage cans, bottles or mats) will be placed in any of the passages, public halls, vestibules, elevators, corridors or stairways of the Condominium, nor will any fire exit thereof be obstructed in any manner.

(x)     Neither occupants nor their guests are permitted to play in, exercise or use for any unintended purposes, the entrances, passages, public halls, elevators, vestibules, corridors and stairways of the Condominium.

(y)     No public hall or public elevator vestibule of the Condominium is permitted to be decorated or furnished by any Residential Unit Owner in any manner.

(z)     There shall be no playing or lounging in the elevator, entrances, passages, public halls, vestibules, corridors, or stairways, of the Building, except in designated recreational areas, if any, or other areas designated as such in the Declaration or by the Board.

(aa)    No window guards or window decorations (other than curtains and window treatments which conform to the By-Laws) are permitted to be used in or about any Residential Unit, unless otherwise required by law, except such as will have been approved in writing by the Board of Managers.

iManage:1566197.1

(bb)  No construction or repair work or other installation involving noise is permitted to be conducted in any Residential Unit except on weekdays (not including legal holidays) and only between the hours of 8:00 A.M. and 5:00 P.M., unless such construction or repair work is necessitated by an emergency or unless such work is performed by the Sponsor.

(cc)  Water closets and other water apparatus and utility closets are not permitted to be used for any purpose other than those for which they were designed, nor are any sweepings, rubbish, rags or any other article permitted to be thrown into the same. Any damage resulting from misuse of any water closets or other apparatus in a Residential Unit will be repaired and paid for by the Residential Unit Owner of such Residential Unit.

(dd)  No Residential Unit Owner is permitted to send any employee of the Condominium or of the managing agent thereof out of the Building on any private business.

(ee)  The agents of the Board of Managers or the managing agent, and any contractor or worker authorized by the Board of Managers or the managing agent, may enter any room or Residential Unit at any reasonable hour of the day, on at least one day's prior written notice to the Residential Unit Owner, for the purpose of inspecting such Residential Unit for the presence of any vermin, insects or other pests and for the purpose of taking measures as may be necessary to control or exterminate any such vermin, insects or other pests; however, such entry, inspection or extermination will be done in a manner so as not to unreasonably interfere with the use of such Residential Unit for its permitted purposes.

(ff)  Corridor doors are required to be kept closed at all times except when in actual use for ingress or egress to and from public corridors.

(gg)  Except as permitted under the Declaration and By-Laws, Residential Unit Owners, their families, guests, servants, employees, agents, visitors, tenants, sublessees or licensees are not permitted at any time or for any reason whatsoever to enter upon or attempt to enter upon the roofs of the Building.

(hh)  Residential Unit Owners, their guests, servants, employees, agents, visitors, tenants, sublessees or licensees will not cause or permit any unusual or objectionable odors to be produced upon or to emanate from their Units or any public portions of the Building.

(ii)  Nothing shall be done or kept in any Residential Unit that will increase the rate of insurance of the Building or the contents thereof, without the prior written consent of the Board. No Residential Unit Owner shall permit anything to be done or kept in their Residential Unit, that will result in the

Manage:1566197.1

cancellation of insurance on the Building, or the contents thereof, or that would be in violation of any Law. No Residential Unit Owner nor any of the Residential Unit Owner's family members, tenants, agents, servants, employees, licenses, or visitors shall, at any time, bring into or keep in their Residential Unit or Common Areas any flammable, combustible, or explosive fluid, material, chemical, or substance, except as shall be necessary and appropriate for the permitted uses of such Residential Unit.

(jj)    No group tour or exhibition of any Residential Unit or its contents may be conducted, nor will any auction sale or other sale of contents be permitted to be held in any Residential Unit, without the prior consent of the Residential Board or the managing agent of the Residential Section.

(kk)    No patients, clients or other invitees are permitted to wait in any lobby, public hallway or vestibule in the event that any Residential Unit is used for home occupation purposes which are permitted by Law and the By-Laws.

(ll)    No barbecuing is permitted in any part of the Building.

(mm)  No Residential Unit Owner is permitted to install any flush mounted speaker, radio, stereo, television or other type of electronic system on any wall that separates one (1) Residential Unit from another. Any improvements beyond the interior walls of a Residential Unit will require the approval of the Board of Managers.

(nn)    All vendors, contractors, sub-contractors and other personnel transporting any equipment, appliances, furniture, plants or other fixtures to a Unit must utilize the elevator designated for such purpose. All Residential Unit Owners, tenants or other residents of the Building moving in or out or transporting any equipment, appliances, furniture or plants or other fixtures must utilize the elevator designated for such purpose.

(oo)    The Board of Managers reserves the right to rescind, alter, waive or add, as to one or more or all Residential Unit Owners, occupants, lessees, guests and any other person residing in the Building, any rule or regulation at any time prescribed for the Condominium when, in the reasonable judgment of the Board of Managers, the Board of Managers deems it necessary or desirable for the reputation, safety, character, security, care, appearance or interests of the Condominium, or the preservation of good order therein, or for the operation or maintenance of the Condominium or the equipment thereof, or the comfort of Residential Unit Owners, occupants or others in the Condominium. No rescission, alteration, waiver or addition of any rule or regulation in respect of one Residential Unit Owner or other occupant will operate as a rescission, alteration or waiver in respect of any other Residential Unit Owner or other occupant.

33

### Section 10.   House Rules and Regulations for the Commercial Units and Commercial Units Limited Common Elements.

(a)   The sidewalks, entrances, passages, public halls, vestibules, corridors and stairways of or appurtenant to the Building for the exclusive use of a Commercial Unit shall not be obstructed or used for any purpose other than ingress to and egress from the Commercial Units.

(b)   No article (including, but not limited to, garbage cans, bottles or mats) shall be placed or stored in any of the halls or on any of the staircases of the Building that may be utilized by the Commercial Units, nor shall any fire exit thereof be obstructed in any manner.

(c)   Nothing shall be hung or shaken from any doors, windows, or placed upon the exterior window sills, of the Building or Commercial Units, and no Commercial Unit Owner shall sweep or throw, or permit to be swept or thrown, any dirt, debris or other substance therefrom.

(d)   There shall be no playing or lounging in the elevators, entrances, passages, public halls, vestibules, corridors, or stairways, of the Building servicing a Commercial Unit.

(e)   Nothing shall be done or kept in any Commercial Unit or a Commercial Unit's Limited Common Element for the exclusive use of an individual Commercial Unit that is not used in conjunction with the operation of the Commercial Unit's business or practice that will increase the rate of insurance of the Building or the contents thereof, without the prior written consent of the Board. No Commercial Unit Owner shall permit anything to be done or kept in their Commercial Unit or a Commercial Limited Common Element for the exclusive use of an individual Commercial Unit, that will result in the cancellation of insurance on the Building, or the contents thereof, or that would be in violation of any Law. No Commercial Unit Owner or any of its tenants, agents, servants, employees, licenses, visitors, clients, patients or customers shall, at any time, bring into or keep in their Commercial Unit or a Commercial Unit's Limited Common Element for the exclusive use of an individual Commercial Unit any inflammable, combustible, or explosive fluid, material, chemical, or substance, except as shall be necessary and appropriate for the permitted uses of such Unit or a Limited Common Element for the exclusive use of an individual Commercial Unit. The portion of any increased insurance premium which results from the specific operation of a Commercial Unit shall be borne by the respective Commercial Unit Owner pursuant to Section 339-bb of the Real Property Law of the State of New York.

iManage:1566197.1

(f)   No construction, repair work, or other installation involving noise shall be conducted in any Commercial Unit except on weekdays (not including legal holidays) and only between the hours of 8:00 A.M. and 5:00 P.M., unless such construction or repair work is necessitated by an emergency or approved by the Board of Managers.

(g)   No bird, reptile, or animal shall be permitted, raised, bred, kept, or harbored in the Commercial Units, except as shall be necessary and appropriate for the permitted uses of such Unit.

(h)   No Commercial Unit Owner shall install any plantings in the General Common Elements, or a Commercial Unit Limited Common Element for its exclusive use, without the prior written approval of the Board. It shall be the responsibility of the Commercial Unit Owner to maintain all plantings in the Commercial Units to prevent any damage to floors and walls. Commercial Owners shall pay the cost of any repairs rendered necessary, or damage caused, by such plantings.

(i)   No patients, clients, or other invitees of a Commercial Unit Owner or its tenant shall be permitted to wait in any lobby, public hallway, or vestibule that is utilized for Residential purposes.

(j)   No window guards or other window decorations shall be used in or about any Commercial Unit, except such as shall have been approved in writing by the Board or the Managing Agent, which approval shall not be unreasonably withheld or delayed. In no event, however, shall any exterior glass surface of any windows at the Property be colored or painted.

(k)   No radio or television aerial shall be attached to or hung from the exterior of the Building, and no sign, notice, advertisement, or illumination (including, without limitation, "For Sale", "For Lease", or "For Rent" signs) shall be inscribed or exposed on or at any window or other part of the Building, except such as are permitted in Article VIII, Section 8(a) or shall have been approved in writing by the Board or the Managing Agent. Nothing shall be projected from any window of a Commercial Unit without similar approval.

(l)   All radio, television, or other electrical equipment of any kind or nature installed or used in each Commercial Unit shall fully comply with all rules, regulations, requirements, or recommendations of the New York Board of Fire Underwriters and the public authorities having jurisdiction, and the Commercial Unit Owner alone shall be liable for any damage or injury caused by any radio, television, or other electrical equipment.

(m)   Water-closets and other water apparatus in the Commercial Unit shall not be used for any purpose other than those for which they were designed, and

35

no sweepings, rubbish, rags or any other article shall be thrown into the same.  Any damage resulting from misuse of any water-closets or other apparatus in a Commercial Unit shall be repaired and paid for by the owner of such Commercial Unit.

(n)   Each Commercial Unit Owner shall keep their Commercial Unit and the Commercial Unit's Limited Common Elements designated to a Commercial Unit for the Commercial Unit's exclusive use in a good state of preservation, condition, repair and cleanliness in accordance with the terms of the By-Laws.

(o)   The agents of the Board or the Managing Agent, and any contractor or workman authorized by the Board or the Managing Agent, may enter any room in a Commercial Unit at any reasonable hour of the day, on at least one day's prior notice to the Commercial Unit Owner, for the purpose of inspecting such Commercial Unit for the presence of any vermin, insects, or other pests and for the purpose of taking such measures as may be necessary to control or exterminate any such vermin, insects, or other pests; however, such entry, inspection and extermination shall be done in a reasonable manner so as not to unreasonably interfere with the use of such Commercial Unit for its permitted purposes.

(p)   The Board or the Managing Agent may retain a pass-key to each Commercial Unit.  If any lock is altered or a new lock is installed, the Board or the Managing Agent shall be provided with a key thereto immediately upon such alteration or installation.  If the Commercial Unit Owner is not personally present to open and permit an entry to their Commercial Unit at any time when an entry therein is necessary or permissible under these Rules and Regulations or under the By-Laws, and has not furnished a key to the Board or the Managing Agent, then the Board or Managing Agent or their agents (but, except in an emergency, only when specifically authorized by an officer of the Condominium or an officer of the Managing Agent) may forcibly enter such Commercial Unit without liability for damages or trespass by reason thereof (if, during such entry, reasonable care is given to such Commercial Unit Owner's property).

(q)   If any key or keys are entrusted by a Commercial Unit Owner, their tenant, or by their agent, servant, employee, licensee, or visitor to an employee of the Condominium or of the Managing Agent, whether for such Commercial Unit Owner's Unit or an automobile, trunk, or other item of personal property, the acceptance of the key shall be at the sole risk of such Commercial Unit Owner, and neither the Board nor the Managing Agent shall (except as provided in Rule (p) above) be liable for injury, loss, or damage of any nature whatsoever, directly or indirectly resulting therefrom or connected therewith.

iManage:1566197.1

(r)    Any consent or approval given under these Rules and Regulations may be amended, modified, added to, or repealed at any time by resolution of the Board. Further, any such consent or approval may, in the discretion of the Board or the Managing Agent, be conditional in nature.

(s)    Complaints regarding the service of the Condominium shall be made in writing to the Board or to the Managing Agent.

(t)    The Board of Managers shall not interfere with the business operation of a Commercial Unit unless it affects the General Common Elements, General Residential Units' Limited Common Elements or the structural integrity of the Building and/or is a violation of any municipal or state code or statute.

(u)    The Commercial Unit Owners and/or their tenants shall have an easement to erect, maintain and replace one (1) or more signs on the property permitted by law for the purpose of advertising the operation of any business conducted therein. Any such signs shall be in compliance with the requirements of the City of White Plains.

(v)    A Commercial Unit Owner shall have the right, without the payment of any fees or charges to the Board, to sell or lease the Commercial Unit without interference by the Board. All sale or rental proceeds shall belong solely to the applicable Commercial Unit Owner.

## Section 11. Violations of Declaration/By-Laws and Rules and Regulations.

Upon receipt, by the President of the Board of Managers or by the Managing Agent, of a signed written complaint alleging violation of any of the House Rules or other provisions of the By-Laws or the Declaration of Condominium as herein established or hereafter established or adopted by the Board of Managers, the President of the Board, or in the President's absence, the Vice President together with a minimum of two (2) other members of the Board, without a formal meeting of the Board, shall make a determination as to the validity of the complaint. The three (3) Board Members hearing any complaint made to the Board of Managers by or against a Commercial Unit Owner must include the respective representative to the Board of such Commercial Unit Owner. Any Unit Owner accused of a violation of the House Rules or other provisions of the By-Laws shall be entitled to receive written notice by registered mail of such accusation. The written notice shall contain the following statements:

(a)    A copy of the rule or regulation the Unit Owner has violated and a description of the manner in which the Unit Owner violated the rule or regulation.

(b)    A time and place at which the Unit Owner shall be given the opportunity to present a defense before final action is taken.

37

iManage:1566197.1

If, after said notice and hearing it is determined that the complaint is valid and justified the Managing Agent shall be directed to send written notice to the violator. If the violation is not corrected or eliminated within a period of three (3) days from the date of receipt of such notice, another notice will be sent levying a fine of up to $150.00 upon the violator; such fine is to be considered as an additional Common Charge to the account of the violator and shall be treated as such regarding late penalties and a lien upon the Unit as elsewhere provided for in the Declaration of Condominium or By-Laws. If after imposition of a fine the violation is not corrected or eliminated, the Board of Managers may assess additional fines of up to $150.00 each after serving written notice upon the violator as provided for above. If the violation results in loss of or damage to property classified as a Common Element, General or Limited, the Board of Managers shall itself or direct the Managing Agent, if employed, to have said loss or damage repaired or replaced and the actual cost of said repair or replacement shall be assessed to the violator as an additional Common Charge.

Any costs incurred by the Board of Managers to remedy or cure any violation of these By-Laws, the Rules and Regulations or the Declaration of Condominium as herein or hereafter established, shall be an additional Common Charge charged to the violator in addition to the One Hundred Fifty Dollars ($150.00) fine(s) levied upon the violator. Fines may be levied against a Unit Owner's tenant, and the Unit Owner shall be jointly and severally liable with his tenant for the payment of same.

In the event the Condominium institutes legal action for the collection of any fines or the enforcement of any of the provisions of the Declaration, By-Laws and/or Rules and Regulations of the Condominium, then the Defendant shall be responsible for payment of reasonable attorney's fees of the Condominium, plus interest and costs of suit.

The above provisions shall not apply to the Sponsor unless required: (a) to comply with applicable laws or regulations, or (b) to remedy any notice of violation.

## ARTICLE IX.  DEFAULT

In the event a Unit Owner does not pay any sums, charges or assessments required to be paid when due, as determined by the Board of Managers, the Board of Managers, acting in behalf of the Board shall notify the Unit Owner and the mortgagee, if any, of such Residential Unit. If such Common Charges, Special Assessment or any other sum, charge or assessment shall remain unpaid for ninety (90) days after the giving of such notice, the Board may foreclose the lien encumbering the Unit as a result of the non-payment of the required monies as set forth in the Declaration (subject to the lien of any first mortgage), in the same manner as the foreclosure of a mortgage. In the event the owner of a Unit does not pay the Common Charge assessment required to be paid by the Unit Owner on its due date, the Board of Managers may collect said fees and take such action as is provided in Article VI, Section 2 of these By-Laws and said Unit Owner shall be liable for

iManage:1566197.1

the Condominium's reasonable costs and a reasonable attorney's fee incurred by it incident to the collection or enforcement of such lien.

In addition to the Board's right to bring an action to foreclose a lien on a Unit Owner's Unit, the Board (on behalf of the Unit Owners) shall have the right to bring suit to recover a money judgment for unpaid Common Charges at the option of the Board, without foreclosing or waiving the lien securing such charges.  In such an event the Unit Owner shall be liable for the reasonable costs and reasonable attorney's fee incurred by it incident to the collection of the delinquent Common Charges.

## ARTICLE X.  AMENDMENTS

These By-Laws may be altered, amended or added to at any duly called Unit Owners meeting; provided: (a) that the notice of the meeting shall contain a full statement of the proposed amendment; (b) that the amendment shall be approved by sixty-six and two-thirds (66⅔%) percent of the Unit Owners in number and common interest and (c) said amendment shall be set forth in a duly recorded amendment to the Declaration.  However, no amendment will affect or impair the validity or priority of the Unit Owners' interest and the interests of holders of a mortgage encumbering a Unit or Unit.

Notwithstanding any provision contained herein to the contrary an Amendment to the By-Laws which affects the Commercial Units may not be adopted without the written consent of the Commercial Unit Owner(s), if there are two (2) or less Commercial Units or at least 66 2/3% of the Commercial Unit Owners if there are three (3) or more Commercial Units.

No amendment to the By-Laws which solely affects the Commercial Units may be adopted without the written consent of at least two (2) of the three (3) Commercial Unit Owners.  In the event the Commercial Units are subdivided as permitted pursuant to Article Sixth of the Declaration so that there are four (4) or more Commercial Units in the Condominium, any amendment to the By-Laws which solely affects the Commercial Units may only be adopted with the written consent of at least seventy-five (75%) percent in number of the Commercial Unit Owners.

Notwithstanding any provision contained herein to the contrary, no amendment to the By-Laws shall be passed which shall impair or prejudice the rights and priorities of the mortgages or the Sponsor.

iManage:1566197.1

## ARTICLE XI.  SELLING, MORTGAGING AND LEASING UNITS

**Section 1.  Selling and Leasing Residential Units.** Any Residential Unit may be conveyed or leased, subject to the leasing requirements contained in Section 2, subject to local zoning ordinances, by its Residential Unit Owner free of any restrictions except that no Residential Unit Owner shall convey, mortgage, pledge, hypothecate, sell or lease their Residential Unit unless and until all unpaid Common Charges assessed against the Residential Unit Owner's Residential Unit shall have been paid to the Board of Managers of the Condominium.  However, such unpaid Common Charges can be paid out of the proceeds of the sale of a Residential Unit, or by the Grantee.  Notwithstanding the above any Residential Unit Owner who wishes to enter into a lease for the Residential Unit Owner's Residential Unit shall submit a notice to the Board of Managers at least thirty (30) days prior to entering into a lease and provide the Board of Managers with the name of the tenant, terms of the lease and copy of the proposed lease.  All leases must comply with all the requirements contained in Section 2 below. Failure to comply will be deemed an automatic violation of the By-Laws of the Condominium.  Further, a Residential Unit Owner may convey the Residential Unit Owner's Residential Unit and common interest appurtenant thereto, to the Board of Managers on behalf of all Residential Unit Owners free of any cost to the Board or the Residential Unit Owners and upon such conveyance such Residential Unit Owner shall not be liable for any Common Charges thereafter accruing against such Residential Unit.  Any sale or lease of any Residential Unit in violation of this section shall be voidable at the election of the Board of Managers.

The provisions of this section shall not apply to the acquisition or sale of a Residential Unit by a first mortgagee who shall acquire title to such Residential Unit by foreclosure or by deed in lieu of foreclosure.  Such provisions shall, however, apply to any purchaser from such mortgagees.

Whenever the term "Residential Unit" is referred to in this section, it shall include the Residential Unit, the Residential Unit Owners undivided interest in the Common Elements and the Residential Unit Owners interest in any Residential Units acquired by the Board of Managers.

**Section 2.  Leasing Requirements.** Except as noted in Sections 4, 5 and 6 every lease on every Residential Unit in the Condominium is subject to the following rules and regulations, regardless of whether stated in the lease:

    (a)    the lease must be in writing;

    (b)    the lease must be for the entire Residential Unit;

    (c)    the lease must be for a minimum term of twelve (12) months.  Renewals shall be for a one (1) year term and are subject to review by the Board of Managers of the Condominium;

    (d)    the use of the premises is subject to the Declaration and the By-Laws of the Condominium and the rules and regulations of the entire Condominium;

    (e)    within thirty (30) days of occupancy by the tenant, the name and telephone number of the tenant, together with a clear and complete copy of the lease,

iManage:1566197.1

must be furnished to the Managing Agent or if no Managing Agent to a Member of the Board of Managers of the Condominium;

(f) within forty-five (45) days of any renewal of a lease of a tenant, the name and telephone number of the tenant, together with a clear and complete copy of the renewal lease, must be furnished to the Managing Agent or if no Managing Agent to the Board of Managers of the Condominium for review;

(g) the Residential Unit cannot be used as a motel or hotel or otherwise for transient tenants;

(h) no advertising of a Residential Unit for lease is permitted in or on the Residential Unit or any part of the Common Elements;

(i) if any Residential Unit Owner (landlord) or tenant is in violation of any of the provisions of the Declaration or By-Laws, or both, including any rules and regulations, the Board of Managers of the Condominium may bring an action in its own name or in the name of the Residential Unit Owner, or both, to have the tenant evicted or to recover damages, or both.

In order to carry out the provisions of this Article XI and pursuant to the provisions of Article Fifteenth of the Declaration of Condominium each Residential Unit Owner shall upon becoming a Residential Unit Owner grant an irrevocable power of attorney, to nominate, designate, constitute and appoint the members of the Board of Managers of the Condominium and their successors, jointly, their true and lawful attorneys-in-fact, coupled with an interest, with power of substitution, in their name and on their behalf, the right to act in their behalf to take any and all action necessary against any tenant(s) that may be residing in a Residential Unit Owner's Condominium Residential Unit including but not limited to, the right to seek an eviction in a court of law for failure to adhere to any of the provisions of the Declaration of Condominium, By-Laws and/or Rules and Regulations of the Condominium. The remedy provided by this subsection is not exclusive and is in addition to any other remedy or remedies available to the Board of Managers of the Condominium. If permitted by present or future law, the Condominium may recover all of its costs, including court costs and reasonable attorney's fees, and these costs shall be a continuing lien on the Residential Unit that shall bind the Residential Unit in the hands of the then Residential Unit Owner and the Residential Unit Owner's successors and assigns. The Board of Managers of the Condominium shall give the tenant and the Residential Unit Owner written notice of the nature of the violation of the rules, and thirty (30) days from the mailing of the notice in which to cure the violation before the Board of Managers of the Condominium may file for eviction.

The foregoing restrictions of Sections 1 and 2 of this Article XI shall not apply to Sponsor owned Residential Units, the Commercial Unit Owners or any mortgagee acquiring title to a Unit, in a foreclosure or otherwise. The Sponsor, its successors, assignees or designees; any mortgagee acquiring title to a Unit in a foreclosure or otherwise and a Commercial Unit Owner shall have the right to freely sell their Unit or to freely lease all or any part thereof as long as the lease and use by a tenant is in compliance with the permitted use of the applicable Unit under the White Plains zoning and occupancy requirements.

iManage:1566197.1

**Section 3.  Tenant Bound by Declaration.**  By becoming a tenant, each tenant agrees to be bound by the Declaration, By-Laws and the other rules and regulations of the Condominium and recognizes and accepts the right and the power of the Board of Managers of the Condominium to evict the tenant for any violation by the tenant of the above, and the other rules and regulations of the Condominium.

**Section 4.  Lenders.**  To protect first mortgage lenders and to encourage first mortgage lenders to make loans on Residential Units in the Condominium, only subsections (b), (d), (e), (f), (g) and (i) of Section 2 of this Article XI shall apply to a first mortgage lender who has title to the Residential Unit through (a) foreclosure of its first mortgage on the Residential Unit; or (b) a deed in lieu of foreclosure of its first mortgage on the Residential Unit.  Any subsequent purchaser from the first mortgage lender is subject to all the terms of Article XI.

**Section 5. Section 339-kk of the Real Property Law.**  Pursuant to the provisions of Section 339-kk of the Real Property Law of the State of New York, any non-occupying Residential Unit Owner who rents any Residential Unit in the Condominium to a rental tenant and then fails to make payments due for Common Charges, assessments or late fees for such Residential Unit within sixty (60) days of the expiration of any grace period after they are due is subject to the following: Upon notice in accordance with the statute, all rental payments from the tenants shall thereafter be directly payable to the condominium association. The provisions of Section 339-kk of the Real Property Law shall control any dispute pursuant to this provision of the By-Laws.   This provision does not apply to any Commercial Unit Owner who rents their Commercial Unit.

**Section 6.  Waiver of Partition Rights.**  The Residential Unit Owners waive all of their voting rights concerning partition respecting any Residential Unit acquired by the Board of Managers in accordance with this Article.

**Section 7. Gifts, etc.**  Any Residential Unit Owner may convey or transfer their Residential Unit by gift during their lifetime or devise their Residential Unit by will or pass the same by intestacy, without restriction.

## ARTICLE XII.  ARBITRATION

**Section 1.  Procedure.**  Any matter required or permitted to be determined by arbitration pursuant to the terms of the Condominium Documents shall be submitted for resolution by a single arbitrator in a proceeding held in the City of White Plains, New York in accordance with the then existing rules of the American Arbitration Association or any successor organization thereto. In the event that the American Arbitration Association shall not then be in existence and has no successor organization, any such arbitration shall be held in the City of White Plains, New York before one arbitrator appointed, upon the application of any party by the Real Estate Board of New York.

iManage:1566197.1

**Section 2.   Variation by Agreement.**   The parties to any dispute required or permitted to be resolved by arbitration pursuant to the terms of the Condominium Documents may, by written agreement, vary any of the terms of Section 1 hereof with respect to the arbitration of such dispute or may agree to resolve their dispute in any manner, including, without limitation, the manner set forth in Section 3031 of the New York Civil Practice Law and Rules and known as "New York Simplified Procedure for Court Determination of Disputes".

**Section 3.  Binding Effect.**   The decision in any arbitration conducted pursuant to the terms of Section 1 and 2 hereof shall be binding upon all of the parties thereto and may be entered in any court of appropriate jurisdiction.

**Section 4.  Costs and Expenses.**   The fees, costs and expenses of the arbitrator shall be borne by the losing party in the arbitration or, if the position of neither party to the dispute shall be substantially upheld by the arbitrator, such fees, costs and expenses shall be borne equally by the disputants.  Each disputant shall also bear the fees and expenses of his counsel and expert witnesses.

All costs and expenses paid or incurred by the Condominium Board in connection with any arbitration held hereunder, including, without limitation, the fees and expenses of counsel and expert witnesses, shall constitute Common Expenses.

## ARTICLE XIII.  CONDEMNATION

In the event all or part of the Common Elements are taken in condemnation or eminent domain proceedings, the award from such proceedings shall be paid to the Insurance Trustee if the award is more than $50,000 and to the Board of Managers if the award is $50,000 or less, to be distributed in accordance with Section 3 of Article VII but in the following amounts:

(a)     So much of the award as is applicable to General Common Elements, to the Unit Owners pro rata according to their respective Percentage of General Common Interest appurtenant to the Units owned by such Unit Owners.

(b)     So much of the award as is applicable to the Residential Units' Limited Common Elements, to the Residential Unit Owners pro rata according to their respective Percentage of Residential Common Interest appurtenant to the Residential Unit owned by such Residential Unit Owner.

(c)     So much of the award as is applicable to Individual Residential Units Limited Common Elements to the Residential Unit Owner having general use of such Limited Common Element.

43

In such eminent domain or condemnation proceeding the Board shall request that the award shall set forth the amount allocated to unrestricted Common Elements and to each irrevocably restricted Common Element. In the event the award does not set forth such allocation then the question of such allocation shall be submitted to the arbitration in accordance with the Arbitration Statutes of the State of New York.

## ARTICLE XIV. SPONSOR RIGHTS

**Section 1. Sales.** The Sponsor, its nominees and agents, shall have the right and privilege to maintain general and local sales offices in and about the Condominium, including any model Units located within the Condominium Building or elsewhere throughout the project, and shall have the right and privilege to have their representatives, employees and agents present on the Condominium premises to show the Units to prospective purchasers, or tenants, to utilize the Common Elements, and without limitation, to do any and all things necessary to incident to the sale or lease of the Residential Units, without charge or contribution other than in the form of Common Charge payments as otherwise provided for herein.

**Section 2. Signs.** The Sponsor shall have the right to continue to employ signs of its choice upon the Condominium premises in its efforts to construct, sell and/or rent the Units. Incident to the rights and privileges provided for herein, the officers, employees, agents, contractors, guests and invitees of the Sponsor, its successors and assigns, shall have the right of ingress and egress to and throughout the Common Elements of the Condominium. This Article XIV may not be modified or amended without the written consent of the Sponsor so long as the Sponsor continues to own one (1) or more unsold Units.

## ARTICLE XV. MISCELLANEOUS

**Section 1. Insurance.** Under no circumstances shall a Unit Owner permit or suffer anything to be done or left in their Unit which will increase the insurance rates on their Residential Unit or any other Unit or on the Common Elements. The portion of any increased insurance premium which is a result of the specific operation of a Commercial Unit shall be borne by the respective Commercial Unit Owner pursuant to Section 339-bb of the Real Property Law of the State of New York.

**Section 2. Severability.** Should any of the covenants, terms or provisions herein imposed be void or be or become unenforceable at law in equity, the remaining provisions of these By-Laws shall, nevertheless, be and remain in full force and effect.

iManage:1566197.1

**Section 3.  Notice to Condominium.**  A Unit Owner who mortgages a Unit, shall notify the Condominium through the management agent, if any, or the President of the Board of Managers of the Condominium and the President of the Board of Directors of the Unit Owners Association in the event there is no management agent, of the name and address of the Unit Owner's mortgagee; and the Board of Managers shall maintain such information in a book entitled "Mortgagees of Units".

**Section 4.  Notice of Unpaid Assessments.**  The Board of Managers shall at the request of a mortgagee of a Unit, report any unpaid Common Charges or other assessments due from the Unit Owners of such Unit.

**Section 5.  Examination of Books and Records.**  Every Unit Owner or Unit Owner's representative and mortgagee shall be entitled to examine the books and records of the Condominium on reasonable notice to the Board but not more often than once a month.

**Section 6.  Construction.**  Wherever the masculine singular form of the pronoun is used in these By-Laws, it shall be construed to mean the masculine, feminine or neuter; singular or plural; wherever the context so requires.

**Section 7.  Compliance with Article 9-B.**  These By-Laws are set forth to comply with the requirements of Article 9-B of the Real Property Laws of the State of New York. In case any of these By-Laws conflict with the provisions of said Statute or of the Declaration, the provisions of the Statute or of the Declaration, whichever the case may be, shall control.

iManage:1566197.1