UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE BOARD OF MANAGERS OF TRUMP TOWER AT CITY CENTER CONDOMINIUM, by its President, Alan Neiditch,<br><br>        Plaintiff,<br><br>   v.<br><br>FRANK PALAZZOLO, MARY PALAZZOLO, STEPHEN TOBIA, STEPHEN REITANO, JOSEPH SANTANGELO, LORRAINE DISTEFANO, GINA THOMAS, LORI OVERTON, F & M FUNDING LLC, RLA HOLDINGS, LLC, PREMIUM STAFFING LLC, PREMIUM PARKING, LLC, ANTOINETTE CITY CENTER, LLC, RIDGEVIEW HOLDINGS LLC, B.A.B. GROUP I, LLC, B.A.B. GROUP, II, LLC, FIRST RESOURCE FUNDING LLC, and REDA, ROMANO & COMPANY, L.L.P.<br><br>        Defendants. | Docket No.: 16-cv-9188 (KMK) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS THE COUNTERCLAIMS ASSERTED BY DEFENDANT FRANK PALAZZOLO AND STRIKING AS IMPROPER AFFIRMATIVE DEFENSES 10–29 FROM THE ANSWER OF DEFENDANTS FRANK PALAZZOLO, MARY PALAZZOLO, F&M FUNDING LLC, RIDGEVIEW HOLDINGS LLC, B.A.B. GROUP I, LLC, AND B.A.B. GROUP II, LLC**

**MEISTER SEELIG & FEIN LLP**
125 Park Avenue, 7th Floor
New York, New York 10017
Tel: (212) 655-3500

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION .............................................................................................1

PRELIMINARY STATEMENT ........................................................................1

STATEMENT OF FACTS ................................................................................3

ARGUMENT.....................................................................................................7

    I.      STANDARD OF REVIEW ...............................................................7

    II.     PALAZZOLO'S COUNTERCLAIMS SHOULD BE DISMISSED.........................8

         A.    Palazzolo Has Waived His Counterclaims .........................................8

         B.    Nearly All of Palazzolo's Counterclaims Are Time-Barred .............10

         C.    Palazzolo Fails to Plead Adequately His Claim for Unjust Enrichment...........11

             1.    The existence of an agreement precludes a claim for unjust enrichment................................................................11

             2.    A claim for unjust enrichment may not be based upon an agreement that violates the statute of frauds. ...........................................14

             3.    There are no credible allegations that equity and good conscience militate against the Board's retention of alleged benefits. ......................15

         D.    Palazzolo Fails to Plead Adequately his Claim for Promissory Estoppel..........17

             1.    Palazzolo Does Not Plead the Repudiation of an Alleged Promise. .........17

             2.    Palazzolo does not allege a clear and unambiguous promise. ..................18

             3.    Palazzolo does not allege reasonable reliance. ......................................19

             4.    Palazzolo does not allege an unconscionable injury. ..............................20

    III.    PALAZZOLO'S IMPROPER AFFIRMATIVE DEFENSES MUST BE STRUCK ....................................................................................21

CONCLUSION...................................................................................................23

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*Ackerman v. Ackerman,*
    549 F. App'x 45 (2d Cir. 2014) .....................................................................................8

*AHA Sales, Inc. v. Creative Bath Prods., Inc.,*
    58 A.D.3d 6, 867 N.Y.S.2d 169 (2d Dep't 2008) ...................................................17

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .....................................................................................................7

*Ashland Inc. v. Morgan Stanley & Co., Inc.,*
    700 F. Supp. 2d 453 (S.D.N.Y. 2010) ......................................................................18

*Associated Mortg. Bankers, Inc. v. Calcon Mutual Mortg. LLC,*
    159 F. Supp. 3d 324 (E.D.N.Y. 2016) ......................................................................11

*Bader v. Wells Fargo Home Mortg., Inc.,*
    773 F. Supp. 2d 397 (S.D.N.Y. 2011) ......................................................................19

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .....................................................................................................7

*Beth Israel Med. Ctr v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.,*
    448 F.3d 573 (2d Cir. 2006) ...............................................................................13 n.8

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.,*
    949 F. Supp. 2d 486 (S.D.N.Y. 2013) ......................................................................18

*Branca v. Bd. of Educ., Schem Cent. Sch. Dist. at Holbrook,*
    239 A.D.2d 494, 657 N.Y.S.2d 445 (2d Dep't 1997) .........................................18-19

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.,*
    373 F.3d 296 (2d Cir. 2004) ......................................................................................11

*Brown v. Noble, Inc.,*
    No. 600876/10, 2010 WL 4941999 (N.Y. Sup. Ct., 2010) ......................................19

*Chiste v. Hotels.com L.P.,*
    No. 08 Cv. 10676 (CM), 2011 WL 2150653 (S.D.N.Y. May 31, 2011) ..................11

*Diesel Props S.r.l. v. Greystone Bus. Credit II LLC,*
    631 F.3d 42 (2d Cir. 2011) ........................................................................................11

*Erlitz v. Segal, Liling & Erlitz,*
    142 A.D.2d 710, 530 N.Y.S.2d 848 (2d Dep't 1988) ..............................................16

*F.D.I.C. v. Pelletreau & Pelletreau,*
 965 F. Supp. 381 (E.D.N.Y. 1997)....................................................................22

*Fero* v. Excellus Health Plan, Inc.,
 236 F. Supp. 3d 735 (W.D.N.Y. 2017)................................................................8

*Fishoff v. Coty Inc.,*
 676 F. Supp. 2d 209 (S.D.N.Y. 2009) ........................................................17, 20

*Fort Worth Employers' Ret. Fund v. Biovail Corp.,*
 615 F. Supp. 2d 218 (S.D.N.Y. 2009) .................................................................8

*Gas Nat., Inc. v. Iberdrola, S.A.,*
 33 F. Supp. 3d 373 (S.D.N.Y. 2014) ...........................................................20-21

*Green Tree Servicing LLC v. Christodoulakis,*
 136 F. Supp. 3d 415 (E.D.N.Y. 2015)........................................................ 11-12

*Hartford Fire Ins. Co. v. Federated Dep't Stores, Inc.,*
 723 F. Supp. 976 (S.D.N.Y. 1989).....................................................................20

*Hussey v. N.Y.S. Dep't of Law,*
 933 F. Supp. 2d 399 (E.D.N.Y. 2013) .................................................................8

*Hyatt Corp. v. Women's Intern. Bowling Congress, Inc.,*
 80 F. Supp. 2d 88 (W.D.N.Y. 1999) ..................................................................18

*IDT Corp. v. Morgan Stanley Dean Witter & Co.,*
 879 N.Y.S.2d 355, 907 N.E.2d 268 (2009) ........................................................11

*In re First Cen. Fin. Corp.,*
 377 F.3d 209 (2d Cir. 2004) ..............................................................................11

*In re Hydrogen, L.L.C.,*
 431 B.R. 337 (Bankr. S.D.N.Y. 2010) ...............................................................16

*In re Jetblue Airways Corp. Privacy Litig.,*
 379 F. Supp. 2d 299 (E.D.N.Y. 2005)................................................................16

*In re Merrill Lynch & Co., Inc.,*
 273 F. Supp. 2d 351 (S.D.N.Y. 2003) ................................................... 5 n.4, 5 n.5

*Kermanshah v. Kermanshah,*
 580 F. Supp. 2d. 247 (S.D.N.Y. 2008) ...............................................................10

*Kotler v. Charming Shoppes Inc.,*
 No. 11 Civ. 3296(SAS), 2012 WL 291512 (S.D.N.Y. Jan. 31, 2012) ...................10

*Mars Assocs., Inc. v. City of New York,*
 70 A.D.2d 839, 418 N.Y.S.2d 27 (1st Dep't 1979)............................................10

*Mishkin v. 155 Condominium,*
   No. 106770/03, 2004 WL 316524 (N.Y. Sup. Ct., Feb. 19, 2004) ........................................12

*Mobile Data Shred, Inc. v. United Bank of Switzerland,*
   No. 99 Civ. 10315, 2000 WL 351516 (S.D.N.Y. Apr. 5, 2000) ............................................21

*MP Innovations, Inc. v. Atl. Horizon Intern., Inc.,*
   72 A.D.3d 571, 899 N.Y.S.2d 213 (1st Dep't 2010) ............................................................15

*Olszewski v. Cannon Point Ass'n., Inc.,*
   148 A.D.3d 1306, 49 N.Y.S.3d 571 (3d Dep't 2017) ..........................................................12

*Paramount Film Distrib. Corp. v. State,*
   334 N.Y.S.2d 388, 285 N.E.2d 695 (1972), *cert. denied*, 414 U.S. 829 (1973) ............... 15-16

*Randolph Equities, LLC v Carbon Capital, Inc.,*
   648 F. Supp. 2d 507 (S.D.N.Y. 2009) ................................................................................19

*Royal York Owners Corp. v. Royal York Assocs., L.P.,*
   No. 600269/04, 2005 WL 1389350 (N.Y. Sup. Ct., June 9, 2005) ......................................12

*Saks v. Franklin Covey Co.,*
   316 F.3d 337 (2d Cir. 2003) ..............................................................................................21

*Schroeder v. Pinterest Inc.,*
   133 A.D.3d 12, 17 N.Y.S.3d 678 (1st Dep't 2015) ........................................................19, 20

*Seduka, LLC v. Street Moda, LLC,*
   No. 14 cv 0271(DAB), 2015 WL 1089575 (S.D.N.Y. Mar. 11, 2015) ...................................8

*Shaub and Williams, L.L.P. v. Augme Techs., Inc.,*
   No. 13 cv 1101 (GBD), 2014 WL 625390 (S.D.N.Y. Feb. 14, 2014) ....................................8

*Siegal v. Spear & Co.,*
   234 N.Y. 479, 138 N.E. 414 (1923) ...................................................................................18

*Snyder v. Bronfman,*
   893 N.Y.S.2d 800, 921 N.E.2d 567 (2009) ...................................................................14, 15

*Steele v. Delverde S.R.L.,*
   242 A.D.2d 414, 662 N.Y.S.2d 30 (1st Dep't 1997) ..........................................................17

*Tacopina v. Kerik,*
   No. 14 cv 749 (LTS), 2016 WL 1268268 (S.D.N.Y. Mar. 31, 2016) ....................................8

*Tasini v. AOL, Inc.,*
   851 F. Supp. 2d 734 (S.D.N.Y. 2012) ................................................................................16

*Thayer v. Dial Indus. Sales, Inc.,*
   85 F. Supp. 2d 263 (S.D.N.Y. 2000) ............................................................................. 19-20

*Tierney v. Capricorn Inv'r, L.P.,*
    189 A.D.2d 629, 592 N.Y.S.2d 700 (1st Dep't 1993)...........................................................19

*Transition Invs., Inc. v. Allen O. Dragge, Jr. Family Trust,*
    No. 11 Civ. 4775(PAC), 2011 WL 5865149 (S.D.N.Y. Nov. 21, 2011) ..............................15

*Weiss v. Bretton Woods Condo II,*
    151 A.D.3d 905, 58 N.Y.S.3d 61 (2d Dep't 2017) .............................................................12

**Rules**

FRCP 12(b)(6) .................................................................................................... 1, 7, 8, 23

FRCP 12(f) ............................................................................................................. 1, 21, 23

**Statutes**

GOL § 5-701.............................................................................................................14, 15

**INTRODUCTION**

Plaintiff Board of Managers of Trump Tower at City Center Condominium ("Plaintiff" or the "Board") respectfully submits this memorandum of law in support of the accompanying motion: (a) to dismiss the counterclaims asserted by Defendant Frank Palazzolo ("Palazzolo") (the "Counterclaims") pursuant to FRCP 12(b)(6); and (b) to strike as improper affirmative defenses 10–29 from the answer (the "Answer") of Defendants Palazzolo, Mary Palazzolo, F&M Funding LLC ("F&M"), Ridgeview Holdings LLC ("Ridgeview"), B.A.B. Group I, LLC ("BAB I"), and B.A.B. Group II, LLC ("BAB II") (collectively, the "Palazzolo Defendants") pursuant to FRCP 12(f); and (c) for such other and further relief as the Court may deem just and proper.

**PRELIMINARY STATEMENT**

In the Answer, Palazzolo asserts two counterclaims—promissory estoppel and unjust enrichment. These counterclaims are unsupported by Palazzolo's allegations, and his pleading instrument fails to satisfy any of the requisite elements. This compels dismissal.

The Amended Complaint describes the Palazzolo Enterprise's theft of millions of dollars from the accounts of the Trump Tower at City Center Condominium (the "Condominium"). The scheme was orchestrated by Palazzolo, who served as the Condominium's Treasurer between 2009 and 2015. As alleged in the Amended Complaint, Palazzolo used the Condominium's money to finance his personal business ventures and the business ventures of his friends and business partners.

In support of his counterclaims, Palazzolo alleges that he was given permission to use the Condominium's funds however he saw fit in order to further the interests of the Condominium. This permission was so broad that it justified everything he ever did as Treasurer (whether in the interest of the Condominium or not). Although Palazzolo does not allege that the Condominium

1

promised to pay him for those efforts, he insists that theories of unjust enrichment and promissory estoppel entitle him either to compensation for those efforts or to recover the lost profits for the opportunities he did not take.  In essence, Palazzolo argues that he had a license to steal, and that for daring to revoke it, the Condominium must pay him.  No legal theory— certainly not unjust enrichment and promissory estoppel—supports such a claim for damages.

Among the myriad infirmities addressed herein, Palazzolo's counterclaims are fundamentally flawed because the promise on which he allegedly relied does not entitle him to the damages he seeks.  To wit: Palazzolo alleges that the Board authorized him to do whatever he wanted with the money in the Condominium's Reserve Accounts.  This is certainly not the case. But even putting that aside for the instant motion, Palazzolo does not contend that the Board reneged on this alleged authorization.  To the contrary, Palazzolo alleges that for many years, the Condominium did not stop him from doing whatever he wanted to do with their money. Nowhere does he allege that he tried to do something with the Condominium's money but was stopped by a regretful Board attempting to revoke prior consent.  Thus, the promise that Palazzolo alleges is not the promise he seeks to enforce.  Rather, Palazzolo is demanding something else; something that is not reflected in the oral promise he alleges.  Palazzolo is demanding payment, even though he never alleges that the Board ever promised to pay him anything.  Absent such a promise, whether his claim sounds in contract or quasi-contract, Palazzolo is not entitled to the damages he seeks.  Palazzolo's failure to allege that he was entitled to compensation for his efforts is no mere oversight; it reflects the futility of the theory behind his purported counterclaims.

This should end the inquiry.  But there is, of course, more.  The Counterclaims are also properly dismissed because: (i) they are unsupported by factual allegations of the requisite

2

elements under New York law; (ii) Palazzolo waived any right to the damages sought by his counterclaims; and (iii) the majority of the Counterclaims are based on alleged acts beyond the applicable statutes of limitations.  For any of these reasons, the counterclaims should be dismissed.

Finally, the Palazzolo Defendants' Answer asserts improperly a collection of so-called "affirmative defenses" which are no more than arguments in support of a motion to dismiss that these Defendants did not (and cannot) bring.  Uncontroversial caselaw requires that this Court strike improper affirmative defenses from Moving Defendants' responsive pleading.

## STATEMENT OF FACTS

The following recitation of facts is drawn from the responsive pleading of the Palazzolo Defendants.[1]

Palazzolo seeks over $5,000,000 in damages comprising a combination of compensation and foregone profits for a litany of efforts he undertook on behalf of the Board and the Condominium between 2004 and 2015, when he was removed from the Board.

At some point in time around 2004, prior to his election as a Board Member in 2007 and prior to his election as Treasurer of the Condominium in 2009, Palazzolo successfully negotiated for the establishment of the Condominium's Reserve Fund.  Dkt. No. 122, ¶¶ 235–44. Specifically, it is alleged that he gave up a $1,000,000 discount, offered to him on his purchase of twenty-one units in the Condominium, so that the Condominium could oust the Sponsor from the Board, have its debt paid off by the Sponsor, and so that it could receive $800,000 from the

---

[1] In consideration of this motion, the allegations of the Counterclaims are presumed true, except where, as noted, they are contradicted by documentary evidence appropriately considered on a motion to dismiss.  Plaintiff does not otherwise concede the truth of any allegation made in the Counterclaims.

Sponsor to establish the Condominium's reserve account (herein, the "Sponsor Transaction").
*Id.*, ¶¶ 235–44, 256.

In 2006, prior to the date on which he alleges he was elected to the Board, Palazzolo convinced "his fellow members of the Board" to purchase energy from someone other than Con Edison. *Id.* ¶ 316. Explaining that this kind of "speculation" was "somewhat obscure", Palazzolo alleges that he saved the Condominium approximately $1,154,000 during the ten-year period that he served as a member of the Board, without "obtaining" any fees or compensation for "arranging the Condominium to obtain its money in this matter" (herein, the "Energy Purchase"). *Id.* ¶¶ 318–19.[2]

In 2007, Palazzolo was elected a member of the Board. *Id.* ¶ 247. Later that year, Palazzolo gave up the opportunity to collect $165,000 in interest (based upon his allegedly standard 12% lending rate) on a $650,000 loan made to the Condominium by an entity under his control to finance the purchase of an apartment for the Condominium's on-site manager (herein, the "Gomez Sale").[3] *Id.* ¶¶ 265–279.

At some unspecified point in 2007, Palazzolo purchased retail spaces in the Condominium through Defendant RLA, thus enabling the Condominium to purchase the "Rec Deck" and Garage (herein, the "Retail Purchase"). *Id.* ¶¶ 280–293.

Palazzolo was elected Treasurer of the Board in early 2009. *Id.* ¶ 248. As Treasurer of the Condominium, Palazzolo's conduct was governed by the rules set forth in the

---

[2] Throughout his counterclaims, Palazzolo's damages are determined by multiplying an annual damage estimate by ten: representing an alleged ten-year term on the Board. *See, e.g.*, Dkt. No. 122 ¶¶ 310, 318. However, Palazzolo did not serve on the Board for ten years. The Counterclaims allege that he was elected to the Board in 2007 and do not otherwise contradict the allegation of the Amended Complaint that he was removed from the Board in 2015. Dkt. No. 120, ¶ ¶ 11. Correspondingly, Palazzolo is incorrect either about the timing of his factual allegations or is simply exaggerating his claimed damages.

[3] Palazzolo does not identify this entity in his Counterclaims.

Condominium's by-laws (the "By-Laws").[4]  At all relevant times, the By-Laws stated that members of the Board were not entitled to compensation for their efforts.  Oppenheim Decl., Exh. A at 12 ("Managers and officers, as such, shall receive no compensation for their services.").

Soon after his election as Treasurer, Palazzolo claims he was granted "broad, unfettered discretion and authority to act on [the Board's] behalf."  Dkt. No. 122, ¶ 250.  From that moment on, it is alleged that the Board was aware of—and approved of—every act taken by Palazzolo. *Id.* ¶¶ 253, 262.  It is alleged that this broad grant of power was conveyed at a meeting of the Board taking place in either June or July of 2009.  At some (or perhaps all) of those meetings, it is alleged that Palazzolo's co-Defendants Tobia and Reitano, along with two other Board Members, Fred Mastroianni and John Durante, gave "full and complete control over the Reserve Account" to Palazzolo, and authorized him to "engage in transactions involving the Board, which in F. Palazzolo's experience, were in the best interests of the Board and the Condominium."  *Id.* ¶ 259.  Although omitted from his allegations, the contemporaneously recorded minutes of Board meetings from that period do not mention this broad grant of power and/or authority.  Oppenheim Decl., Exh. B.[5]  In reliance on this "express" authorization, Palazzolo used the funds in the Condominium's reserve accounts "at his discretion so as to enhance its value and further the business of the Board and the Condominium."  *Id.* ¶¶ 260–61.

---

[4] A true and correct copy of the Condominium's By-Laws is attached to the accompanying declaration of Adam B. Oppenheim as ("Oppenheim Decl.") Exhibit A.  Consideration of these materials is appropriate upon the instant motion as they are integral to the counterclaims and well-known to Palazzolo.  *See, e.g.*, *In re Merrill Lynch & Co., Inc.*, 273 F. Supp. 2d 351, 356 (S.D.N.Y. 2003).

[5] True and correct copies of the minutes of the Board meetings taking place in June and July of 2009 are attached to the Oppenheim Declaration as Exhibit B.  Like the By-Laws, they are appropriately considered upon this motion as they are both integral to the Counterclaims and well-known to Palazzolo.  *In re Merrill Lynch & Co., Inc.*, 273 F. Supp. 3d at 356).

Critically, Palazzolo does not allege that the Board promised him compensation for the things he did on behalf of the Condominium.  The "express agreement" Palazzolo describes is limited to the promise that he had permission to do whatever he wanted with the Condominium's Reserve Account.  *Id.* ¶ 259.  It is not alleged to be a promise to pay him anything.

At some point in time "during his tenure as treasurer of the Board" (*i.e.*, presumably after 2009) Palazzolo alleges that he saved the Condominium at least $1,690,000 over a ten-year period by hiring non-union employees without "obtaining management or consulting fees" (herein, the "Non-Union Staffing").  *Id.* ¶¶ 305–13.

At another unspecified time, Palazzolo alleges that he secured leases of space on the Condominium's rooftop to "FlowTV" that generated $570,000 for the ten-year period that he served on the Board (herein, the "Rooftop Lease").[6]  *Id.* ¶¶ 314–15.  This allegation is unconnected to any prayer for relief: Palazzolo does not allege that he was not compensated for securing this lease, nor does he allege that he was entitled to the income allegedly received by the Condominium attributable to his efforts.  *Id.*

At yet another unspecified point in time, Palazzolo alleges he purchased cheaper insurance policies for the Condominium, saving at least $800,000 over a ten-year period without "obtaining" management or consulting fees (herein, the "Insurance Savings").  *Id.* ¶¶ 320–23.

At some point between 2006, when the Sponsor gave up control of the Board, and 2009, Palazzolo "directed" the opportunity to secure control of certain foreclosed apartments to the Board.  *Id.* ¶¶ 324–333.  Palazzolo alleges that these efforts generated income of $1,020,660.33 to the Condominium and, through an otherwise unexplained process, generated a combination of

---

[6] It is likely Palazzolo is referring to the easement granted by Condominium in 2010 to FloTV (Dkt. 120 ¶¶ 113–18). That easement was abandoned in 2014.  *Id.*

common charges and market rent rates of $2,470,000 (herein, the "Foreclosed Rentals"). *Id.* ¶¶ 333–339.

Finally, in October 2012, Palazzolo alleges that, through Defendant F&M, he performed emergency flood repairs for unit owners in the Condominium. It is alleged that in connection with these efforts, he negotiated "below market rates" for the benefit of the Board and unit owners of the Condominium. *Id.* ¶¶ 296–99. At some unspecified time, he also effected unspecified capital improvements and amenity upgrades, such as "significant improvements to the Rec Deck." *Id.* ¶ 303. Palazzolo alleges that the total cost of the flood repairs and the capital improvements and amenity upgrades was greater than the amount of the insurance proceeds with which he reimbursed himself and F&M from the Reserve Account. *Id.* ¶¶ 303–04 (herein, the "Flood Damage/Amenity Improvements").

Palazzolo alleges that the total amount of these lost opportunities and his foregone compensation is over $5,000,000. *Id.* ¶ 346.

## ARGUMENT

## I.      STANDARD OF REVIEW

The standard of review upon a motion to dismiss is well known. In order to survive a motion to dismiss brought pursuant to Rule 12(b)(6), a complaint must set forth allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Where a complaint fails to "nudge[] claims across the line from conceivable to plausible" it must be dismissed. *Id.* at 547. Further, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). An identical standard governs the instant motion to dismiss counterclaims for

failure to state a cognizable cause of action. *Tacopina v. Kerik*, No. 14 cv 749 (LTS), 2016 WL 1268268, at \*3 (S.D.N.Y. Mar. 31, 2016) ("A motion to dismiss counterclaims under Rule 12(b)(6) is decided under the same standard applied to a motion to dismiss the claims of a complaint."); *Seduka, LLC v. St. Moda, LLC*, No. 14 cv 0271(DAB), 2015 WL 1089575, at \*2 (S.D.N.Y. Mar. 11, 2015).

## II.   PALAZZOLO'S COUNTERCLAIMS SHOULD BE DISMISSED

### A.   Palazzolo Has Waived His Counterclaims

In support of his Counterclaims, Palazzolo avers repeatedly that he gave up opportunities to make money for himself by acting, instead, for the benefit of the Condominium. This waiver of opportunities fundamentally contradicts the gravamen of his Counterclaims. Having waived those opportunities, Palazzolo is foreclosed from recovering them under theories of promissory estoppel or unjust enrichment.

It is axiomatic that where claims are contradicted by inconsistent pleadings they must be dismissed. *See Fort Worth Employers' Ret. Fund v. Biovail Corp.*, 615 F. Supp. 2d 218, 221 (S.D.N.Y. 2009) (dismissing complaint where allegations of securities fraud were "self-refuting" and determined to "fatally undermine" plaintiff's theory of liability); *Ackerman v. Ackerman*, 549 F. App'x 45, 46 (2d Cir. 2014) (dismissing claims as time-bared where plaintiff's "own allegations . . . undermine his argument"); *Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 782 (W.D.N.Y. 2017) (dismissing with prejudice those claims inconsistent with allegations in pleadings); *Hussey v. N.Y.S. Dep't of Law*, 933 F. Supp. 2d 399, 411 (E.D.N.Y. 2013) (same); *Shaub and Williams, L.L.P. v. Augme Techs., Inc.*, No. 13 cv 1101 (GBD), 2014 WL 625390, at \*9 (S.D.N.Y. Feb. 14, 2014) (denying leave to amend to add affirmative defenses that were undermined by factual allegations in pleadings).

Here, Palazzolo seeks damages in the form of compensation and lost profits that, in his counterclaims, he alleges that he agreed to forego. *See, e.g.*, Dkt. No. 122 ¶ 244 (the Sponsor Transaction) ("in lieu of acceptance of the Discount Offer, which would have inured to the benefit of F. Palazzolo only, he [accepted] the Sponsor's contribution of $800,000 to establish a reserve account for the benefit of the Condominium"); ¶ 270 (the Gomez Sale) ("he did not take advantage of this business opportunity and the benefit that would have been conferred upon himself personally"); ¶ 285 (the Retail Purchase) ("F. Palazzolo did not take advantage of this clear business opportunity as a private investor"); ¶ 299 (the Flood Damage/Amenity Improvements) ("F. Palazzolo [acted] to the benefit of the Board and unit owners, rather than to profit himself"); ¶ 313 (the Non-Union Staffing) ("F. Palazzolo did not take the opportunity"); ¶ 319 (the Energy Purchase) ("F. Palazzolo did not obtain management fees, consulting fees, or other financial benefits he could have received as a businessperson"); 322 (the Insurance Savings) ("F. Palazzolo did not obtain management fees, consulting fees, or other remuneration he would have been entitled to for securing this insurance"); 327 (the Foreclosed Rentals) ("F. Palazzolo did not take these clear business opportunities for himself personally. . . and instead directed the opportunities for the benefit of the Board").

By virtue of his unambiguous waiver of these opportunities, set forth repeatedly in his own pleadings, Palazzolo makes impossible his Counterclaims sounding in unjust enrichment and promissory estoppel.

Further evidence of the waiver that dooms the Counterclaims is found in Section 8 of the By-Laws, which state that Palazzolo could not receive compensation for his service as either a Board member or as the Condominium's Treasurer.  Oppenheim Decl., Exh. A at 12.  Such a waiver in a separate writing has the same effect as that made in a pleading, and requires

dismissal of inconsistent counterclaims. *See, e.g., Mars Assocs., Inc. v. City of New York*, 70 A.D.2d 839, 840, 418 N.Y.S.2d 27, 28 (1st Dep't 1979). By agreeing that he would not be compensated for any of his efforts while serving as a Board Member, Palazzolo has forgone the compensation he now seeks. Accordingly, the Counterclaims for unjust enrichment and promissory estoppel must be dismissed.

**B.      Nearly All of Palazzolo's Counterclaims Are Time-Barred**

The relevant statute of limitations for unjust enrichment seeking monetary damages is three years. *See, e.g., Kermanshah v. Kermanshah*, 580 F. Supp. 2d 247, 263 (S.D.N.Y. 2008). The relevant statute of limitations for promissory estoppel is six years. *See, e.g., Kotler v. Charming Shoppes Inc.*, No. 11 Civ. 3296(SAS), 2012 WL 291512, *2–*3 (S.D.N.Y. Jan. 31, 2012). Here, Palazzolo seeks damages arising from conduct indisputably beyond the reach of the relevant statutes of limitations for his claims.

The Complaint in this action was filed on November 28, 2016 (Dkt. No. 1). Correspondingly, Palazzolo may not assert any claim sounding in unjust enrichment (seeking monetary damages) that arose prior to November 28, 2013, nor any claim sounding in promissory estoppel prior to November 28, 2010. Thus, the Counterclaims are replete with time-barred allegations.

Specifically, Palazzolo asserts time-barred counterclaims for promissory estoppel or unjust enrichment arising from: the Sponsor Transaction in 2004 (Dkt. No. 122 ¶¶ 235–246, 256–57); the Gomez Sale in 2007 (*id.* ¶¶ 265–279); the 2007 Retail Purchase (*id.* ¶¶ 280–293); the Non-Union Staffing decision (presumably) made in 2007 (*id.* ¶¶ 305–313); the Rooftop Lease (presumably) entered into in 2010 (*id.* ¶¶ 314–315); the Energy Purchase in 2006 (*id.* ¶¶

316–319); the Insurance Savings in 2007 (*id.* ¶¶ 320–323); and the recommendation to undertake the Foreclosed Rentals in 2009 (*id.* ¶¶ 324–328).

Palazzolo's claim for damages from the Flood Damage/Amenity Improvement is the single claim that is not time-barred—at least with respect to his Counterclaim for promissory estoppel.[7] *Id.* ¶¶ 294–304.

### C.     Palazzolo Fails to Plead Adequately His Claim for Unjust Enrichment

The Counterclaim for unjust enrichment is unsupported by the necessary allegations.  In New York, a claim for unjust enrichment requires allegations that: "(1) the defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover."  *Associated Mortg. Bankers, Inc. v. Calcon Mutual Mortg. LLC*, 159 F. Supp. 3d 324, 336 (E.D.N.Y. 2016), *quoting Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004).  Palazzolo has not—and cannot—plead any of these things, requiring dismissal of this counterclaim.

### 1.     The existence of an agreement precludes a claim for unjust enrichment.

As the Second Circuit has explained, unjust enrichment is a legal theory pursuant to which the law creates an obligation "in the absence of any agreement."  *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 54 (2d Cir. 2011).  Correspondingly, where a contract exists, a party may not bring a claim for unjust enrichment.  *See, e.g., IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 879 N.Y.S.2d 355, 907 N.E.2d 268, 274 (2009); *In re First Cen. Fin. Corp.*, 377 F.3d 209, 213 (2d Cir. 2004); *Chiste v. Hotels.com L.P.*, No. 08 Cv. 10676 (CM), 2011 WL 2150653, at *2 (S.D.N.Y. May 31, 2011) ("Because a valid contract governs [the parties'] dispute, [plaintiff] cannot maintain a claim for unjust enrichment"); *Green Tree*

---

[7] Because those acts took place in 2012, they are beyond the statute of limitations for Palazzolo's unjust enrichment counterclaim seeking monetary damages based on those events.

*Servicing LLC v. Christodoulakis*, 136 F. Supp. 3d 415, 424 (E.D.N.Y. 2015) (a party "cannot maintain a 'quasi contract' claim, such as an unjust enrichment claim, where a contract governing the subject matter exists.").

Palazzolo's service on the Board was governed by the Condominium's By-Laws, and those By-Laws are an enforceable contract.  New York courts have consistently treated condominium by-laws as contracts, to be interpreted by principles of contract law.  *Olszewski v. Cannon Point Ass'n., Inc.*, 148 A.D.3d 1306, 1308, 49 N.Y.S.3d 571, 575 (3d Dep't 2017) ("the administration of the condominium's affairs is governed principally by its bylaws, which are, in essence, an agreement among all of the individual unit owners as to the manner in which the condominium will operate, and which set forth the respective rights and obligations of unit owners, both with respect to their own units and the condominium's common elements") (internal citations omitted); *Weiss v. Bretton Woods Condo. II*, 151 A.D.3d 905, 906, 58 N.Y.S.3d 61, 62 (2d Dep't 2017) (same); *Mishkin v. 155 Condo.*, No. 106770/03, 2004 WL 316524, *2 (N.Y. Sup. Ct., Feb. 19, 2004) ("A condominium's by-laws constitute a contract with the unit owners, and are, as all contracts, to be construed in a manner giving effect to all of their terms.").

Correspondingly, New York courts have held that similar claims for unjust enrichment are precluded by the existence of condominium by-laws.  *See, e.g.*, *Royal York Owners Corp. v. Royal York Assocs., L.P.*, No. 600269/04, 2005 WL 1389350, at *4 (N.Y. Sup. Ct., June 9, 2005) ("a party cannot maintain a claim for unjust enrichment while there is an express contract covering the same subject matter . . . .  As the Declaration and Bylaws govern the parties' conduct regarding the condominium, plaintiffs have no claim for unjust enrichment.").

Here, Palazzolo alleges that he conferred a benefit of not less than $5,000,000 on the Condominium beginning with his election to the Board in 2007.  Dkt. No. 122, ¶¶ 247–346. Because his service was governed by the By-Laws, Palazzolo cannot maintain a claim for unjust enrichment for interest he did not charge the Condominium (*id.* ¶ 279), for the increased value of the commercial units he purchased (*id.* ¶ 291), for the millions he could have made if he had acquired the Rec Deck and Garage for himself (*id.* ¶ 293), for unspecified sums he claims he spent on "Amenity Improvements" and flood damage (beyond the insurance checks he diverted to his own businesses) (*id.* ¶ 304); for forgoing management fees for hiring non-union employees (*id.* ¶ 313), for securing rooftop leases on the rooftop (*id.* ¶ 315), for recommending a change to the Condominium's utility provider (*id.* ¶ 319) (ignoring for the moment his refusal to pay for ACC's use of Condominium utilities), for getting cheaper insurance (*id.* ¶ 323), and for proposing the idea of collecting rent on apartments in foreclosure (*id.* ¶ 338).

None of these acts can be the subject of a claim for unjust enrichment under New York law because they were all governed by the By-Laws, which state that Board members are not to receive compensation for their efforts.[8]

Even ignoring the By-Laws, Palazzolo pleads the existence of an agreement with the Board that would independently preclude his Counterclaims.  Specifically, Palazzolo pleads the existence of an agreement with the Board that, he claims, gave him the right to use the Condominium's money however he saw fit.  Dkt. No. 122, ¶¶ 259, 260 (describing an agreement that "granted to F. Palazzolo full and complete control over the Reserve Account and permission and authority to engage in transactions involving the Board, which in F. Palazzolo's experience,

---

[8] To the extent that Palazzolo proposes to argue that his claim for unjust enrichment is a form of "alternative recovery," that argument, too, must fail.  Such alternative pleadings are permitted only in instances where there is a question as to the contract's validity.  *Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586 (2d Cir. 2006).

were in the best interests of the Board and the Condominium").  While Plaintiff disputes that

such an agreement was ever consummated (or could constitute an enforceable promise), it is

nevertheless an affirmative assertion that precludes Palazzolo's Counterclaims.  Thus, putting

aside the By-Laws that <u>also</u> preclude Palazzolo's counterclaims, this contention, made in his own

pleadings, dooms his efforts as well.

> 2.      A claim for unjust enrichment may not be based upon an agreement that violates
>          New York's statute of frauds.

Palazzolo's unjust enrichment Counterclaim must also be dismissed because it violates

New York's statute of frauds.  That law prohibits a claim sounding in unjust enrichment that

seeks compensation for negotiating business opportunities pursuant to an un-memorialized

agreement.  Article 5 of New York's General Obligations Law ("GOL") requires that:

> every agreement, promise or undertaking is void, unless it or some
> note or memorandum thereof be in writing, and subscribed by the
> party to be charged therewith, or by his lawful agent, if such
> agreement, promise or undertaking . . . [i]s a contract to pay
> compensation for services rendered in negotiating a loan, or in
> negotiating. . . a business opportunity . . . .  This provision shall
> apply to a contract implied in fact or in law to pay reasonable
> compensation.

GOL § 5-701(a)(10).

In support of his Counterclaims, Palazzolo alleges the existence of an oral agreement

that, if it existed, would violate New York's statute of frauds.  New York's Court of Appeals has

explained this straightforward principal of law:

> Unjust enrichment and quantum meruit are, in this context,
> essentially identical claims, and both are claims under 'a contract
> implied . . . in law to pay reasonable compensation.'  Indeed, the
> 'implied in fact or in law' language was added to the statute in
> 1964 to make clear that the statute of frauds applies to quantum
> meruit claims.

*Snyder v. Bronfman*, 893 N.Y.S.2d 800, 802, 921 N.E.2d 567, 569 (2009) (dismissing claims seeking compensation for efforts in putting together acquisitions for defendants' joint venture). This rule of law is uniformly applied in similar cases. *See, e.g.*, *Transition Invs., Inc. v. Allen O. Dragge, Jr. Family Trust*, No. 11 Civ. 4775(PAC), 2011 WL 5865149 (S.D.N.Y. Nov. 21, 2011) (statute of frauds required dismissal of unjust enrichment claim seeking compensation for negotiating business opportunities); *MP Innovations, Inc. v. Atl. Horizon Intern., Inc.*, 72 A.D.3d 571, 899 N.Y.S.2d 213, 214–15 (1st Dep't 2010) (same).

Here, Palazzolo's alleges that his authority derives from an unwritten agreement.  This runs afoul of New York's statute of frauds and is, correspondingly, an unenforceable promise. He alleges that he was granted "authority to engage in transactions involving the Board" at a meeting of the Board in June or July of 2009.  Doc. No. 122 ¶ 259.  However, this alleged broad grant of authority was not (and is not alleged to be) memorialized in writing anywhere.  (Nor, as noted previously, do the contemporaneous Board minutes reflect such an agreement.)  Because this broad grant of authority was not memorialized, it violates Article 5 of the GOL, and is an unenforceable promise. *See, e.g.*, *Bronfman*, 921 N.E.2d at 569.  Correspondingly, this Court must dismiss Palazzolo's counterclaim for unjust enrichment.  *Id.*

        3.     There are no credible allegations that equity and good conscience militate against the Board's retention of alleged benefits.

Palazzolo's unjust enrichment counterclaim must also be dismissed for a failure to identify any facts supporting the conclusory allegation that equity and good conscience require restitution of no less than $5,000,000.  Dkt. No. 122 ¶ 356.  This central allegation is required of any claim sounding in unjust enrichment.  "The essential inquiry in any action for unjust enrichment . . .  is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered." *Paramount Film Distrib. Corp. v. State*, 334 N.Y.S.2d

388, 393, 285 N.E.2d 695, 698 (1972), *cert. denied*, 414 U.S. 829 (1973); *In re Jetblue Airways*

*Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 330 (E.D.N.Y. 2005); *Tasini v. AOL, Inc.*, 851 F.

Supp. 2d 734, 741 (S.D.N.Y. 2012) ("Moreover, equity and good conscience plainly do not

support the plaintiffs. . . [who] candidly admit that they did not expect compensation.").

Further, these allegations may not be made in conclusory fashion.  *In re Hydrogen,*

*L.L.C.*, 431 B.R. 337, 359–60 (Bankr. S.D.N.Y. 2010) (dismissing claims where "equity and

good conscience" element was plead in conclusory fashion); *Erlitz v. Segal, Liling & Erlitz*, 142

A.D.2d 710, 712, 530 N.Y.S.2d 848, 850 (2d Dep't 1988) (dismissing counterclaims consisting

of the mere allegation of a benefit received).

Here, Palazzolo's allegations are far too threadbare.  Rather than alleging facts showing

that equity and good conscience require him to get anything, Palazzolo recites the legal standard

that equity and good conscience dictate restitution in his favor.  Courts have repeatedly noted

that mere recitation is not the equivalent of a factual allegation.  *See, e.g.*, *Hydrogen*, 431 B.R. at

359–60; *Erlitz*, 530 N.Y.S.2d at 850.

Further, Palazzolo's repeated waiver of any entitlement to compensation or profits make

any allegation of equity and good conscience impossible as a matter of law.  *See, e.g.*, *Tasini*,

851 F. Supp. 2d at 741.  For example, Palazzolo alleges that he "gave up. . . personal business

opportunities . . . foregoing the monetary benefit that would have been conferred upon himself

personally and instead acted so as to benefit the Board and the Condominium."  Doc. No. 122 ¶

251.  (This was, of course, his obligation acting as a Board Member and the Treasurer of the

Condominium.)  Similarly preclusive allegations are legion.  Dkt. No. 122 ¶ 256 (Palazzolo

recommends that the Sponsor make cash infusions to the Board instead of giving him a

$1,000,000 discount on the purchase of additional apartment units); ¶ 260 (Palazzolo used the

Reserve Account to "further the business of the Board and the Condominium"); ¶ 262 (describing transactions "all of which were done to enhance the value of the Reserve Fund"); ¶ 270 (Palazzolo foregoes a business opportunity to the benefit of the Board and the Condominium); ¶ 275 (Palazzolo agreed not to collect past interest for the benefit of the Board); ¶ 285 (Palazzolo did not take advantage of a business opportunity and instead advised the Condominium to purchase the Rec Deck and Garage); ¶ 298 (Palazzolo agreed to effect emergency repairs for the benefit of the Board without payment or commissions).

In this manner, Palazzolo's counterclaims emphasize the very point that compels dismissal: <u>he did not do a single one of these things because he thought he was going to be paid for them.</u>  Correspondingly, his claim for unjust enrichment must be dismissed as a matter of law.

### D.      Palazzolo Fails to Plead Adequately his Claim for Promissory Estoppel

To plead a claim for promissory estoppel under New York law, Palazzolo must allege: (a) a clear and unambiguous promise; (b) reasonable and foreseeable reliance by the party to whom the promise is made; and (c) an unconscionable injury sustained by the party asserting the estoppel by reason of his reliance.  *Fishoff v. Coty Inc.*, 676 F. Supp. 2d 209, 216 (S.D.N.Y. 2009); *AHA Sales, Inc. v. Creative Bath Prods., Inc.*, 58 A.D.3d 6, 9, 867 N.Y.S.2d 169, 181 (2d Dep't 2008); *Steele v. Delverde S.R.L.*, 242 A.D.2d 414, 415, 662 N.Y.S.2d 30, 31 (1st Dep't 1997).  Having failed to allege these elements, Palazzolo's counterclaim for promissory estoppel must be dismissed.

### 1.      Palazzolo Does Not Plead the Repudiation of an Alleged Promise.

New York Courts have long explained that the purpose of the doctrine of promissory estoppel is to "avoid the harsh results of allowing the promisor . . . to repudiate, when the

promisee has acted in reliance upon the promise." *Hyatt Corp. v. Women's Intern. Bowling Congress, Inc.*, 80 F. Supp. 2d 88, 99–100 (W.D.N.Y. 1999) (*citing Siegal v. Spear & Co.*, 234 N.Y. 479, 138 N.E. 414, 416 (1923)).  Palazzolo, however, does not allege any such repudiation by the Condominium.

Instead, Palazzolo alleges that he was given permission to use the Condominium's Reserve Funds however he saw fit.  Dkt. 122, ¶ 259.  Even if that were an enforceable promise (as discussed below, it is not), Palazzolo does not allege that the Condominium repudiated this promise.  Rather, he alleges that the Condominium did not pay him for his efforts when there was a falling-out over his alleged theft of millions of dollars.  But Palazzolo does not allege a promise by the Condominium to pay him anything for his efforts, nor a promise by the Condominium to refrain from attempting to recover funds that he stole from the Reserve Accounts.  Rather, Palazzolo's own pleadings establish that he received the benefit of his bargain: he was, in fact, able to use the Condominium's reserve funds however he saw fit.  This disconnect between the alleged conduct and the damages sought compels dismissal of this counterclaim.

2.    Palazzolo does not allege a clear and unambiguous promise.

Palazzolo's promissory estoppel counterclaim must also be dismissed because he has failed to allege the first element of that claim: the existence of a "clear and unambiguous promise."  Absent such an allegation, a claim for promissory estoppel must be dismissed.  *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 949 F. Supp. 2d 486, 516–17 (S.D.N.Y. 2013) (dismissing claims for failure to allege clear and unambiguous promise).  The allegation must be more than conclusory.  *Ashland Inc. v. Morgan Stanley & Co., Inc.*, 700 F. Supp. 2d 453, 472 (S.D.N.Y. 2010); *Branca v. Bd. of Educ., Sachem Cent. Sch. Dist. at Holbrook*, 239 A.D.2d 494,

657 N.Y.S.2d 445, 447 (2d Dep't 1997); *Brown v. Noble, Inc.*, No. 600876/10, 2010 WL 4941999, at *4 (N.Y. Sup. Ct., 2010).

The sum total of Palazzolo's allegations of a clear and unambiguous promise are found in the conclusory assertions of a single paragraph of his counterclaims.  Palazzolo claims that— either (i) as of the date of the Board's creation; or (ii) at Board meetings in June of 2009; or (iii) at Board meetings in July of 2009—the majority of the members of the Board (including two co-defendants) "granted to F. Palazzolo full and complete control over the Reserve Account and permission and authority to engage in transactions involving the Board, which in F. Palazzolo's experience, were in the best interests of the Board and the Condominium." *Id.*  This does not identify a "clear and unambiguous" promise and, correspondingly, cannot be the basis for a claim sounding in Promissory Estoppel.

      3.     <u>Palazzolo does not allege reasonable reliance.</u>

Palazzolo also does not plead the second element of his purported counterclaim for promissory estoppel: his reasonable reliance on a clear and unambiguous promise.  This, too, is a pleading requirement that cannot be satisfied with conclusory language.  *See, e.g.*, *Schroeder v. Pinterest Inc.*, 133 A.D.3d 12, 17 N.Y.S.3d 678, 694–95 (1st Dep't 2015); *Tierney v. Capricorn Inv'r., L.P.*, 189 A.D.2d 629, 592 N.Y.S.2d 700, 703–04 (1st Dep't 1993).

Further, courts have long held that this is impossible where, as here, an enforceable contract governs the subject matter of the alleged promise.  *See, e.g.*, *Bader v. Wells Fargo Home Mortg., Inc.*, 773 F. Supp. 2d 397, 414-15 (S.D.N.Y. 2011) (listing authority) (the existence of a contract makes it impossible for a claiming party to have "*reasonably* relied on those statements as a matter of law") (*quoting Randolph Equities, LLC v Carbon Capital, Inc.*, 648 F. Supp. 2d 507, 524 (S.D.N.Y. 2009) (emphasis in original); *Thayer v. Dial Indus. Sales, Inc.*, 85 F. Supp.

2d 263, 272 (S.D.N.Y. 2000); *Hartford Fire Ins. Co. v. Federated Dep't Stores, Inc.*, 723 F. Supp. 976, 993 (S.D.N.Y. 1989) ("Faced with a comprehensive contract . . . authorizing [defendant's] conduct, the Plaintiffs cannot invoke promissory estoppel to avoid its enforcement.").

Thus, because Palazzolo's service as a Board Member and as Treasurer of the Condominium was governed by a written agreement—the Condominium's By-Laws—his claim for promissory estoppel must be dismissed.  The By-Laws specified that he was not entitled to any compensation for his service as either a Board Member or as the Condominium's Treasurer. Oppenheim Decl., Exh. A at 12.  Correspondingly, he cannot maintain a counterclaim sounding in promissory estoppel seeking to recover compensation for things he did while serving as a Board Member and Officer of the Condominium.  *Bader*, 773 F. Supp. 2d at 414-15.

Here, Palazzolo alleges no specific facts, but instead repeats the stock epithet that his acts were either "in reliance upon the Board Representation" (Dkt. No. 122 ¶¶ 262, 279, 292) or in reliance on the conduct of the Board (*id.* ¶¶ 298, 312, 319, 323) or both (*id.* ¶¶ 329, 338).  This is plainly insufficient.  *Schroeder*, 17 N.Y.S.3d at 694 (dismissing claims where "complaint merely states, in conclusory fashion, that plaintiffs 'reasonably relied on [defendant's] promise.'").  Thus, the counterclaim for promissory estoppel is also insufficiently pleaded for failure to allege reasonable reliance on a clear and unambiguous promise.

    4.    <u>Palazzolo does not allege an unconscionable injury.</u>

Finally, looking past these infirmities, the counterclaim for promissory estoppel must also be dismissed because it does not allege an unconscionable injury.  As Courts have explained, this requires alleging more than the "expectation damages which flow naturally from the non-performance of the alleged agreement."  *Fishoff*, 676 F. Supp. 2d at 220; *see also Gas Nat., Inc.*

*v. Iberdrola, S.A.*, 33 F. Supp. 3d 373, 386 (S.D.N.Y. 2014) ("Plaintiff . . . cannot plausibly allege that it suffered an actionable 'injury' as a result of reliance on Defendants' promise, because it has not plausibly alleged that Defendants acted in a way inconsistent with that promise.").

Here, Palazzolo alleges only that he either could have been paid as a consultant (which is not a promise he alleges that the Board made) or that he lost profits in reliance on the Board's conduct. But lost profits are not recoverable damages pursuant to a claim for promissory estoppel. *See, e.g., Mobile Data Shred, Inc. v. United Bank of Switzerland*, No. 99 Civ. 10315, 2000 WL 351516, *4 (S.D.N.Y. Apr. 5, 2000) ("in the absence of 'egregious' circumstances, courts have consistently rejected promissory estoppel claims when the alleged injuries consisted of lost profits, lost fees, foregone business opportunities or damage to business reputation").

Palazzolo simply has not alleged that Plaintiff caused him unconscionable injury by acts inconsistent with what Palazzolo alleges was the parties' agreement to give him complete discretion to use the Reserve Accounts however he saw fit. His allegations are insufficient to support a counterclaim for promissory estoppel.

## III.     PALAZZOLO'S IMPROPER AFFIRMATIVE DEFENSES MUST BE STRUCK

The Answer recites generic arguments appropriate for a motion to dismiss and labels them "affirmative defenses." Pursuant to FRCP 12(f), those affirmative defenses should be stricken. As the Second Circuit has explained, an affirmative defense is an "assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all allegations in the complaint are true." *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003) (quoting Black's Law Dictionary). Correspondingly, an affirmative defense "which previously has been rejected on a defendant's motion to dismiss is thereupon insufficient as a

matter of law and must be stricken." *F.D.I.C. v. Pelletreau & Pelletreau*, 965 F. Supp. 381, 390 (E.D.N.Y. 1997) ("An affirmative defense which previously has been rejected on a defendant's motion to dismiss is thereupon insufficient as a matter of law and must be stricken.").

In their Answer, the Palazzolo Defendants asserted 30 affirmative defenses (nos. 10–29; Dkt. No. 122 ¶¶ 386–425) which are little more than arguments in support of a motion to dismiss that the Palazzolo Defendants were denied permission to make, or previews of defenses they are free to offer at trial.  None are appropriate affirmative defenses: 10 (failure to establish predicate racketeering acts) (*id.* ¶¶ 386–87); 11 (failure to establish racketeering acts of mail fraud) (*id.* ¶¶ 388–89); 12 (failure to establish racketeering acts of wire fraud) (*id.* ¶¶ 390–91); 13 (failure to establish racketeering acts of bank fraud) (*id.* ¶¶ 392–93); 14 (failure to establish racketeering acts in violation of the National Stolen Property Act) (*id.* ¶¶ 394–95); 15 (failure to establish knowing participation in a scheme to defraud) (*id.* ¶¶ 396–97); 16 (failure to establish knowing use of the mail to further a scheme to defraud) (*id.* ¶¶ 398–99); 17 (failure to establish a pattern of predicate acts) (*id.* ¶¶ 400–401); 18 (no related or continuous pattern of conduct) (*id.* ¶¶ 402–03); 19 (Palazzolo Defendants are not members of a RICO enterprise) (*id.* ¶¶ 404–05); 20 (Palazzolo Defendants did not operate as either an ongoing organization or as a continuing unit) (*id.* ¶¶ 406–07); 21 (Plaintiff has not been injured) (*id.* ¶¶ 408–09); 22 (no evidence of participation in a conspiracy) (*id.* ¶¶ 410–11); 23 (no reliance on fraudulent misrepresentations) (*id.* ¶¶ 412–13); 24 (no participation in the conduct of the enterprise's affairs) (*id.* ¶¶ 414–15); 25 (no continuity) (*id.* ¶¶ 415–16); 26 (no injury) (¶¶ 418–19); 27 (damages not compensable) (*id.* ¶¶ 420–21); 28 (no common purpose) (*id.* ¶¶ 422–23); and 29 (failure to plead) (*id.* ¶¶ 424–25).

These are not affirmative defenses—they are just argument.  Further, they are relevant argument only in support of a motion to dismiss that these Defendants cannot bring. Correspondingly, they should be stricken from the pleading.

## **CONCLUSION**

In view of the foregoing, Plaintiff respectfully requests that the Court dismiss Palazzolo's Counterclaims against Plaintiff pursuant to FRCP 12(b)(6), strike Affirmative Defenses 10–29 contained within the Answer pursuant to FRCP 12(f), and grant Plaintiff such other and further relief as the Court deems just and proper.


Date: February 16, 2018                              Respectfully submitted,

                                                     MEISTER SEELIG & FEIN LLP

                                                     _____
                                                                /s/ Adam B. Oppenheim

                                                     Adam B. Oppenheim, Esq.
                                                     Jeffrey A. Kimmel, Esq.

                                                     *Attorneys for Plaintiff*